(88 P.3d 242)
No. 90,942

SALINE COUNTY BOARD OF COUNTY COMMISSIONERS AND SALINE COUNTY APPRAISER, *Appellants*, v. RICHARD R. JENSEN and SANDRA L. JENSEN, *Appellees*.

Opinion filed April 23, 2004.

*Michael A. Montoya*, of Michael A. Montoya, P.A., of Salina, for appellant.

*Robert A. Martin, Kenneth W. Wasserman*, and *Jason L. Reed*, of Norton, Wasserman, Jones, & Kelly, of Salina, for appellees.

Before RULON, C.J., GREENE, J., and ROGG, S.J.

GREENE, J.: This is a property tax appeal wherein the Saline County Appraiser and Board of County Commissioners (County) appeal an order of the district court that modified in part an order of the State Board of Tax Appeals (BOTA) determining the values of several parcels of real estate and improvements owned by Richard and Sandra Jensen (Jensens). The County contends that the court (i) did not honor its limited standard of review, (ii) determined facts that were not supported by the record, and (iii) otherwise erred as a matter of law. We affirm in part, reverse in part, and remand with directions.

### Factual and Procedural Overview

The BOTA actions subject to judicial review involve the valuations of real estate and improvements within three multifamily developments located in Saline County and commonly known as Southwind, Chalet, and Birch Manor (apparently renamed Oaktree but referred to herein as Birch Manor). The Jensens paid property taxes under protest for tax year 1999 pursuant to K.S.A. 2003 Supp. 79-2005, contending that the County's valuations were excessive.

Southwind consists of 30 multifamily units built in 1958 on 14 acres formerly located on Schilling Air Force Base near Salina. The units were originally constructed as duplexes but were remodeled

in 1987 as fourplexes of 2,200-2,300 square feet each, with five bedrooms, four baths, and central heat and air. Despite these multiple structures, the property is considered a single parcel for property tax purposes, since it cannot be divided absent replatting. The property is rather unique in that there are no public improvements serving the property; the Jensens are responsible for maintenance and replacement of streets, sewers, fire hydrants, and streetlights. BOTA concluded that the value of this property for tax year 1999 was $2,540,510, relying primarily on the County's aggregated sales comparison approach. The district court concluded that the aggregated sales comparison approach was "inappropriate" and that the value of this property was $1,940,000, relying exclusively on the Jensens' income approach.

Chalet is a single apartment building containing 18 two-bedroom apartments constructed in 1978. This property does not have the unique aspects of Southwind. BOTA concluded that the value of this property for tax year 1999 was $475,010, relying exclusively on the County's income approach. The district court concluded that this value was not supported by substantial competent evidence and adjusted certain components within the income approach, modifying the final value to $377,000.

Birch Manor is a three building 27-unit condominium complex, of which the Jensens own 23 units, and each unit is considered a separate parcel. The buildings were constructed during 1975 to 1977 and contain a total of 21,062 square feet of rentable space. The complex has been zoned for condominiums since 1980, but the Jensens rent each unit separately, contending there is no market for these properties as condos. BOTA concluded that the units should be valued as apartments, relied exclusively on the Jensens' income approach to value the entire 23-unit package at $580,000, and then allocated this value to each unit. The district court affirmed BOTA's value.

The County appeals the valuations determined for all three of these properties.

*Standard of Review*

Judicial review of orders of BOTA is governed by K.S.A. 77-621. For purposes of this appeal, application of this statute requires the

appellate court to grant relief if: (i) the agency has erroneously interpreted or applied the law, K.S.A. 77-621(c)(4); (ii) the agency has engaged in an unlawful procedure or has failed to follow prescribed procedure, K.S.A. 77-621(c)(5); (iii) the agency action is based on a determination of fact, made or implied by the agency, that is not supported by evidence that is substantial when viewed in light of the record as a whole, K.S.A. 77-621(c)(7); or (iv) the agency action is otherwise unreasonable, arbitrary, or capricious, K.S.A. 77-621(c)(8).

The County generally bears the burden of proof at BOTA in matters of residential and commercial property valuations.

"With regard to any matter properly submitted to the board relating to the determination of valuation of residential property or real property used for commercial and industrial purposes for taxation purposes, it shall be the duty of the county appraiser to initiate the production of evidence to demonstrate, by a preponderance of the evidence, the validity and correctness of such determination except that no such duty shall accrue to the county or district appraiser with regard to leased commercial and industrial property unless the property owner has furnished to the county or district appraiser a complete income and expense statement for the property for the three years next preceding the year of appeal. No presumption shall exist in favor of the county appraiser with respect to the validity and correctness of such determination." K.S.A. 2003 Supp. 79-2005(i).

Moreover, on appeal of BOTA's decision, the party complaining bears the burden of demonstrating that the agency erred. K.S.A. 77-621(a)(1). When the district court has reviewed an agency decision prior to this court's review, we focus on the agency action and apply the same standards of judicial review. *Connelly v. Kansas Highway Patrol*, 271 Kan. 944, 964, 26 P.3d 1246 (2001), *cert. denied* 534 U.S. 1081 (2002).

When construing tax statutes, imposition provisions are considered penal in nature and must be construed strictly in favor of the taxpayer. *In re Tax Appeal of Harbour Brothers Constr. Co.*, 256 Kan. 216, 223, 883 P.2d 1194 (1994). Interpretation of any statute is a question of law over which this court has unlimited review. *Matjisich v. Kansas Dept. of Human Resources*, 271 Kan. 246, 250-51, 21 P.3d 985 (2001). Although BOTA's decisions in its area of expertise are given deference, this court will take corrective steps

if BOTA's actions are erroneous as a matter of law. *In re Tax Appeal of Intercards, Inc.*, 270 Kan. 346, 349, 14 P.3d 1111 (2000).

## Did BOTA Err in its Valuation of Southwind?

The County's sales comparison approach to valuing Southwind was based on recent individual sales of purportedly comparable units, specifically one triplex and two fourplexes. Adjustments were made to the comparable sales for differences with the subject fourplexes in age, construction type, quality, and other factors. After arriving at an adjusted comparable market value for each fourplex, an aggregated value was determined by simply "adding up" the individual values to arrive at the value of the entire parcel of 30 units.

BOTA adopted the result of this approach, concluding:

"The Board finds that the County's recommended value is the best estimate of the fair market value of the subject property for tax year 1999. The Board finds that the properties utilized by the County in its sales comparison analysis are comparable to the subject property. The Board further finds that the County's value is supported by its cost approach and by income approach calculations. The County's income calculations utilize replacement reserves based on actual replacement estimates allocated over the actual life expectancy of the item."

After a hearing on reconsideration, BOTA refused to modify its valuation decision but did not express further reliance on the alternate approaches, stating that "the County's recommended value, using the sales comparison approach, is the best estimate of the fair market value of the subject property."

The district court took issue with several aspects of BOTA's value determination, concluding *inter alia*:

"No theory under the USPAP [Uniform Standards of Professional Appraisal Practice] or any other appraisal theory or methodology would support a separate value for each unit and adding together the value of each of the individual units in the Southwind residential complex as opposed to viewing them as one economic unit based on the resulting income stream.

"The County used a comparable sales approach to valuing Southwind without any supporting analysis.

. . . .

"The income approach to valuation is the appropriate method under USPAP due to how the properties are bought and sold and the typical purchaser would be an investor.

"The only income approach for the Board of Tax Appeals to consider was that presented by the property owner.

. . . .

"The evidence supports the value of [$1,940,000]."

On appeal the County argues that the district court failed to give deference to BOTA's determinations of fact, specifically BOTA's findings as to appropriate reserves to be used in the income approach and BOTA's finding that the County had conducted an income approach.

We begin our analysis by determining whether BOTA erred as a matter of law in adopting the County's sales comparison approach to value. K.S.A. 79-503a requires that the appraisal process conform to generally accepted appraisal procedures. K.S.A. 79-505 and K.S.A. 79-506 require that appraisal practice be governed by uniform standards, and until such time as specific standards are adopted for Kansas, the Uniform Standards of Professional Appraisal Practice (USPAP), issued by the Appraisal Standards Board, apply. These standards are embodied in the statutory scheme of valuation, and a failure by BOTA to adhere to them may constitute a deviation from a prescribed procedure or an error of law. See *Board of Ness County Comm'rs v. Bankoff Oil Co.*, 265 Kan. 525, 542, 960 P.2d 1279 (1998).

We conclude, as did the district court, that the aggregated sales comparison approach proposed by the County and adopted by BOTA was violative of the USPAP under these circumstances. Appraisal Standards Rule 1-4 of the USPAP, applicable to the development of real estate appraisals, states *inter alia*:

"(e) An appraiser must analyze the effect on value, if any, of the assemblage of the various estates or component parts of a property and *refrain from valuing the whole solely by adding together the individual values of the various estates or component parts.*

"Comment: Although the value of the whole may be equal to the sum of the separate estates or parts, it also may be greater than or less than the sum of such estates or parts. Therefore, the value of the whole must be tested by reference to appropriate data and supported by an appropriate analysis of such data." (Emphasis added.) Appraisal Standards Board, *Uniform Standards of Professional Appraisal Practice*, Standards Rule 1-4(e), p. 19 (2002).

A similar prohibition is found in Appraisal Standards Rule 6-5(d), p. 50-51 (2002), (applicable to calibrated mass appraisal by tax authorities); although not directly applicable here, we note this prohibition only to further support our conclusion that the practice in question is simply not permissible in any appraisal context. Although both of the Appraisal Standards Rules referenced and relied upon are subject to the USPAP's Departure Rule, no departure is permitted where the rule is both applicable and necessary to the circumstances. USPAP, Departure Rule, p. 11 (2002). The record does not address or support a departure.

The County argues that even if the County's sales comparison approach was not reliable, BOTA also referenced and relied upon the County's alternate cost and income approaches. We acknowledge that BOTA's original order indicates some reliance on these alternate approaches, but we note from BOTA's order on reconsideration that it apparently withdrew any such reliance, conceding that the County had "not considered" the income approach and characterizing the belated County income indicator as "impromptu." Most importantly, BOTA's conclusion upon reconsideration clearly and unequivocally relies exclusively on the County's sales comparison approach as the "best estimate" of fair market value. We conclude that BOTA's reliance on an approach to value that is expressly prohibited by the USPAP was a departure from prescribed procedure and was erroneous as a matter of law. On this issue, we reverse BOTA and affirm the district court.

Despite our affirmance of the district court's conclusion on the sales comparison approach to value, we are unable to affirm the district court's value conclusion. Upon rejecting the sales comparison approach, the district court substituted the Jensens' income approach. The problem is that BOTA also considered this approach and specifically found as a matter of fact that there were flaws in the Jensens' income approach, specifically an overestimation of the repair and replacement reserves for quasi—public services. Although the district court found that such "reserves" were "appropriate," we conclude that there was adequate evidence in the record to support BOTA's finding that the amount may have been "overestimated." Unfortunately, we are unable to determine an

appropriate reserve since it also appears that BOTA may not have considered reserves for anything other than streets. Accordingly, we must remand this issue to the district court with directions to remand to BOTA to determine the fair market value of Southwind as a single parcel, with due consideration of its unique characteristics, without reference or reliance on the flawed aggregated sales comparison approach, with due consideration if not principal reliance on the income approach pursuant to K.S.A. 79-503a, and with careful adherence to generally accepted appraisal practice including the USPAP standards in redetermining repair and replacement reserves to be utilized within the income approach to value.

### *Did BOTA Err in Valuing Chalet?*

The County's income approach to valuing Chalet employed a traditional income approach to value; a potential income stream of $86,400 (less 5% vacancy and collection loss), less operating expenses of $27,177 ($1.25/square foot), was capitalized at 11.6% to arrive at an estimated value of $473,300. After including $1,710 for additional undeveloped land, the County proposed a total value for the parcel of $475,010. The Jensens offered no competing appraisal of this parcel, but criticized the County's approach, specifically the components of expense allowance and capitalization rate. The Jensen's argued that when comparable expenses and an accurate capitalization rate were employed in the County's model, the value was reduced to $377,807. BOTA rejected the Jensens' criticisms and adopted the County's income valuation as the fair market value of the parcel for tax year 1999. On reconsideration, BOTA was not persuaded to revise or modify its valuation determination.

The district court found that BOTA's valuation was not supported by substantial competent evidence and that the County did not sustain its burden of proof, concluding *inter alia*:

"The expense per square foot for Chalet at $1.25 is not sufficient. The appropriate amount should be $1.83 per square foot.

"The cap rate used for Chalet differs from those used in comparison without any information in the record to support such difference.

"The properties of Chalet and those compared to it are similar and should be assigned a similar cap rate and expense rate per square foot.

"Using the appropriate cap rate and expense per square foot, the value to be placed on Chalet Apartments is [$377,000]."

On appeal, the County argues that BOTA's value was supported by adequate record evidence and the district court's valuation was not and, in any event, that the court did not give to BOTA the deference required by law.

Our analysis for this property is limited to determining whether BOTA's valuation was based on determinations of fact that were supported by evidence that was substantial when viewed in light of the record as a whole, K.S.A. 77-621(c)(7), and whether the resulting valuation was otherwise arbitrary, capricious, or unreasonable, K.S.A. 77-621(c)(8). Substantial evidence is evidence possessing "both relevance and substance which furnishes a substantial basis of fact from which the issues can reasonably be resolved." *U.S.D. No. 233 v. Kansas Ass'n of American Educators*, 275 Kan. 313, 318, 64 P.3d 372 (2003). Moreover, although we cannot assess credibility of the witnesses or reweigh the evidence, we must bear in mind that the County had the burden of proof before BOTA and that the County was entitled to no presumption of correctness of its initial appraisal of the property. K.S.A. 2003 Supp 79-2005(i).

Our review of the record reveals that the County called only a single witness to support its initial appraisal of the property. The witness, a deputy county appraiser, testified: (i) he was completely unfamiliar with the property; (ii) he did not perform the County's appraisal; (iii) he had not recently reviewed the work of the commercial appraiser who does apartment appraisals; (iv) he was unable to say whether the County had ever reviewed the Jensens' actual operating expenses; (v) he was unable to compare the $1.25 per square foot for expenses with those of comparable properties; (vi) he had "no idea" whether the $1.25 per square foot for expenses was representative or reasonable for such properties; (vii) he confirmed that the subject property was comparable to properties where the County had utilized $1.83 per square foot for expenses and 11.9% to 12.81% for a capitalization rate; and (viii) he appeared to testify only because his boss told him to be there, even though the County employee who performed the appraisal remained in the County's employ.

In contrast, Richard Jensen and a professional appraiser testified for the Jensens and established: (i) The County had assigned 50% less for expenses per square foot to Chalet and used the lowest capitalization rate for any apartment properties in Saline County; (ii) actual expenses for Chalet were $1.70 per square foot; (iii) when the average expense allowance ($1.83 per square foot) and lowest capitalization rate (11.9%) employed by the County on four comparable apartment complexes was substituted in the County's income model for Chalet, a valuation of $377,000 was achieved; (iv) the appraiser testified that $1.25 per square foot for expenses was "ridiculous" for such properties and that $1.83 was "on the low side," especially when compared to 11 comparables that reflected expenses of $2.16 to $3.75 per square foot.

We conclude that the district court did not err in determining that BOTA's valuation was not supported by evidence that was substantial when viewed in light of the record as a whole. We further conclude that BOTA failed to follow prescribed procedure in disregard of K.S.A. 2003 Supp. 79-2005(i), which clearly places the burden of proof on the County and prohibits any presumption of validity and correctness for the County's appraisal. The County's initial appraisal standing alone cannot be sustained absent supporting evidence of its validity and correctness, and such evidence should be provided by someone with appraisal experience who is familiar with the property, the appraisal, and the local market for such properties. The deputy county appraiser was simply not qualified to demonstrate the validity and correctness of the County's valuation, and BOTA departed from a prescribed procedure in adopting the County's valuation absent such demonstration. We reverse BOTA's valuation for this reason and affirm the district court's determination of value for Chalet for tax year 1999.

### Did BOTA Err in Valuing Birch Manor?

BOTA adopted the Jensens' approach to the valuation of Birch Manor, which considered the highest and best use for the property as apartments and then employed a traditional income approach to value, arriving at total value of $580,000 for tax year 1999. The County contended that this was inappropriate, since the property

was zoned for condominiums and apartment use was technically prohibited within that zoning classification. Accordingly, the County used a sales comparison approach for 19 of the units, a cost approach for the remaining 4 units, and then summed the values to arrive at total value of $1,137,330.

In rejecting the County's approach, BOTA noted that the cost approach is particularly inappropriate because there is no rational way to allocate the cost of each unit's share of common structural features within a single building. In adopting the Jensens' income approach, BOTA found that it was "only a matter of semantics whether the subject property is an apartment complex or condominiums for lease, and further that the value of the subject property should not vary greatly depending on the connotation."

On reconsideration, BOTA reaffirmed these findings, stating:

"The Board finds that, regardless of whether the subject properties are considered to be condominiums or apartments, the Taxpayer's value is the best estimate of their fair market values. The Board finds that the Taxpayer is legally permitted to rent out the subject properties, and the income approach is an appropriate method to value the units. The Board finds that the fact are not analogous to *Hixon v. Lario* [*Enterprises, Inc.*] because the Taxpayer is not advocating the application of a discount, but merely used a different generally accepted appraisal method than the County selected. 257 Kan. 377 (1995)."

The district court affirmed BOTA's valuation of Birch Manor, concluding *inter alia*:

"The highest and best use of the property is as an apartment complex and the income approach provides the highest and best use.

"The income approach accurately estimates the market income, vacancy and collection rate, expenses, and capitalization rate appropriate for the subject properties.

"The use of the property by taxpayer is not an illegal use.

"The taxpayer is allowed to rent the units in the same manner as an apartment.

"The Board of Tax Appeals previously determined that the [Birch Manor] complex shall be valued as an apartment complex.

"The income approach provides the best estimate of fair market value."

On appeal, the County argues that BOTA and the district court erred as a matter of law in disregarding the zoning prohibition for the property to be used as apartments and that the highest and best use cannot possibly be an illegal use. The County also claims

that allocating an income approach to various units is essentially recognizing a developer's discount and is violative of the constitutional uniform and equal mandate, citing *Hixon v. Lario Enterprises, Inc.*, 19 Kan. App. 2d 643, 648-49, 875 P.2d 297 (1994). The Kansas Supreme Court affirmed but modified the Court of Appeals opinion in *Hixon v. Lario Enterprises, Inc.*, 257 Kan. 377, 892 P.2d 507 (1995).

Our analysis begins with the dispute whether apartment rental is a prohibited or illegal use for Birch Manor. Although the County's argument is largely dependent on this assertion, we find little if any support for it in the record or the appellate briefs. In fact, the only record support is the testimony of the same deputy county appraiser who testified with regard to Chalet. With regard to Birch Manor, he testified that it was "his understanding" that apartments were a prohibitive use for these properties, but he admitted in cross-examination that he was "not making any decisions on legal or illegal" and that "there's nothing illegal about renting out a condominium unit." Richard Jensen testified that the properties had been operated as apartments since at least 1988, were "grandfathered" permissibly as apartments, and that he intended to change the zoning to eliminate this problem in the future. The Jensens' appraiser, Bernie Shaner, testified that use as apartments was permissible for the properties, referencing the Salina zoning ordinance as follows:

"It's not zoned for apartments. It's zoned for condominiums, but under the— under the current zoning—under the PDD [Planned Development District], one of the allowed uses is anything under R-2. And under R-2 that statute says that any, and I'm paraphrasing, 'any zoning prior to 1989 conditional uses multi-family that existed prior to 1989 provided that any such use that existed on March 10th of 1989, shall not be deemed to be a non-conforming use but shall without further action be deemed allowable conforming use.'"

Neither the record nor the appellate briefs contain, cite, or quote the precise Salina zoning ordinances in question. Absent any further support for the County's assertion of illegality, the County has failed to sustain its burden to show that BOTA's actions were invalid. K.S.A. 77-621(a)(1). We are unable to conclude that BOTA

or the district court erred in finding apartment use permissible for these properties.

As a result of our conclusion as to permissible use, the County's argument that the Jensens' valuations violate the uniform and equal mandate also fails. The argument assumes that the only legal use for the properties is as condominiums and then compares the unit valuations determined when used as apartments to purported comparable properties sold as condominiums. Since we have rejected the fundamental premise for this argument, the assertion that condominium sales are comparable or even relevant, we decline to address the argument further. We conclude that BOTA and the district court are affirmed as to the $580,000 valuation of Birch Manor for tax year 1999.

### Conclusion

We affirm the district court's conclusions (i) reversing BOTA's adoption of the aggregated sales comparison approach on Southwind, (ii) reversing BOTA's valuation of Chalet and adopting the Jensens' modifications to the income approach, and (iii) affirming BOTA's valuation of Birch Manor. We reverse the district court's conclusion adopting the Jensens' income approach for Southwind, and we remand to the district court with directions to remand to BOTA for further proceedings not inconsistent with this opinion.

Affirmed in part, reversed in part, and remanded with directions.