(214 P.3d 707)
No. 100,499

IN THE MATTER OF THE PROTESTS OF CITY OF HUTCHINSON/
DILLON STORES FOR TAXES PAID FOR 2001 AND 2002 IN RENO
COUNTY, KANSAS, AND IN THE MATTER OF THE PROTESTS OF
DILLON REAL ESTATE CO., INC. FOR TAXES PAID FOR 2001
AND 2002 IN RENO COUNTY, KANSAS.

882

Opinion filed August 21, 2009.

*Robert O'Connor* and *Jarrod C. Kieffer*, of Stinson Morrison Hecker L.L.P., of Wichita, for appellants.

*S. Lucky DeFries* and *Jeffrey A. Wietharn*, of Coffman, DeFries and Nothern, A Professional Association of Topeka, for appellee.

Before RULON, C.J., GREENE and LEBEN, JJ.

GREENE, J.: Dillon Real Estate Company, Inc. and City of Hutchinson/Dillon Stores (Dillon) appeal the district court's order setting aside the Kansas Board of Tax Appeals' (BOTA) property tax valuation of $5,500,000 for a Dillon Distribution Center (DDC) in Reno County for tax years 2001 and 2002, and adopting in its place a valuation of $7,900,000. Concluding BOTA's valuation was adequately supported, we reverse the district court and affirm BOTA's valuation order.

## *Factual and Procedural Background*

The subject property, or DDC, is held under a single ownership and used for a common purpose, which is as a storage and distribution center to support Dillon's network of retail grocery stores. The property is located on approximately 84 acres, consists of 10 separate but contiguous buildings that collectively total more than 700,000 square feet, and includes: (1) the perishables warehouse, (2) the main building, (3) the bakery, (4) the dispatch office, (5) the salvage building, (6) the truck wash, (7) the truck garage, (8) the maintenance building, (9) the quonset building, and (10) the dairy.

The Reno County Appraiser valued the DDC for tax year 2001 based on an appraisal from Wayne Kubert that concluded a value of $7,900,000. Dillon protested this valuation, suggesting a value instead in the range of $4,400,000 to $4,900,000, although the formal protest forms appear to be incomplete in this regard. No relief was granted at the local level, and Dillon perfected a protest to BOTA. Before a hearing could be conducted, the parties repeated their valuation positions and protests for the 2002 tax year. Thereafter, and for purposes of this appeal, the parties have agreed that

the valuation determined herein shall be applicable to both tax years 2001 and 2002.

In the hearing before BOTA, Dillon contended that the County's valuations did not reflect the fair market value of the subject property for each of the years at issue, as required by K.S.A. 79-501 *et seq.*, and specifically violated appraisal standards prohibiting a summation approach to value. The County argued that its valuation represented the fair market value, and specifically, that the existence of valuable refrigerated space had not been adequately considered by Dillon's appraiser. Dillon's expert appraisal witnesses, Grant Gardner and Daniel Craig, valued the DDC at $4,400,000 and $4,910,000 respectively. The County's appraisal expert, Wayne Kubert, valued the DDC at $7,900,000.

After hearing the evidence, BOTA concluded the Kubert valuation violated a uniform appraisal practice standard by valuing buildings separately and summing their values. BOTA found Dillon's appraiser Craig's valuation to be reasonable but found that he did not adequately account for the more valuable freezer/cooler space. Due to this failing, BOTA determined the valuation of the property to be $5,500,000, adding $590,000 to Craig's valuation conclusion. On reconsideration, BOTA explained that, "[b]ased upon the comparable properties with freezer/cooler space," this adjustment "more accurately estimates the additional value contributed by the freezer/cooler space."

The County appealed BOTA's value determination to the district court, arguing that BOTA failed to adequately explain its decision and that BOTA's valuation was not adequately supported by the record. The district court set aside BOTA's order, adopted the Kubert appraisal, and valued the property at $7,900,000. Dillon timely appeals.

### *Standards of Review*

Judicial review of orders of BOTA is governed by K.S.A. 77-621. For purposes of this appeal, application of this statute requires the appellate court to grant relief if: (i) the agency has erroneously interpreted or applied the law, K.S.A. 77-621(c)(4); (ii) the agency has engaged in an unlawful procedure or has failed to follow pre-

scribed procedure, K.S.A. 77-621(c)(5); (iii) the agency action is based on a determination of fact, made or implied by the agency, that is not supported by evidence that is substantial when viewed in light of the record as a whole, K.S.A. 77-621(c)(7); or (iv) the agency action is otherwise unreasonable, arbitrary, or capricious, K.S.A. 77-621(c)(8).

The legislature recently clarified our standard of review of an agency factfinding by the enactment of L. 2009, ch. 109, sec. 28, with the following language:

"For purposes of this section, 'in light of the record as a whole' means that the adequacy of the evidence in the record before the court to support a particular finding of fact shall be judged in light of all the relevant evidence in the record cited by any party that detracts from such finding as well as all of the relevant evidence in the record, compiled pursuant to K.S.A. 77-620, and amendments thereto, cited by any party that supports such finding, including any determinations of veracity by the presiding officer who personally observed the demeanor of the witness and the agency's explanation of why the relevant evidence in the record supports its material findings of fact. In reviewing the evidence in light of the record as a whole, the court shall not reweigh the evidence or engage in de novo review."

This clarification became effective on July 1, 2009, and we apply it here.

The County generally bears the burden of proof at BOTA in matters of residential and commercial property valuations.

"With regard to any matter properly submitted to the board relating to the determination of valuation of residential property or real property used for commercial and industrial purposes for taxation purposes, it shall be the duty of the county appraiser to initiate the production of evidence to demonstrate, by a preponderance of the evidence, the validity and correctness of such determination except that no such duty shall accrue to the county or district appraiser with regard to leased commercial and industrial property unless the property owner has furnished to the county or district appraiser a complete income and expense statement for the property for the three years next preceding the year of appeal. No presumption shall exist in favor of the county appraiser with respect to the validity and correctness of such determination." K.S.A. 2003 Supp. 79-2005(i).

Moreover, on appeal of BOTA's decision, the party complaining bears the burden of demonstrating that the agency erred. K.S.A. 77-621(a)(1). When the district court has reviewed an agency de-

cision prior to this court's review, we focus on the agency action and apply the same standards of judicial review. *Connelly v. Kansas Highway Patrol*, 271 Kan. 944, 964, 26 P.3d 1246 (2001), *cert. denied* 534 U.S. 1081 (2002). This court, however, has exclusive jurisdiction of all BOTA (now "COTA," the Court of Tax Appeals) orders issued after June 30, 2008. K.S.A. 2008 Supp. 74-2426(c)(2).

### *Were BOTA's Findings of Fact Supported by Evidence that Is Substantial When Considered in Light of the Record as a Whole?*

Dillon argues on appeal that BOTA's valuation was adequately supported and should not have been set aside by the district court. Dillon argues BOTA's adjustment and final value was "well within the range and limits of the evidence," as the valuations offered by all the parties' experts were between $4.4 million and $7.9 million.

In contrast, the County argues that BOTA's valuation could not be affirmed by the district court because its $590,000 adjustment was not supported or explained and that BOTA therefore adjusted Craig's appraisal by an arbitrary amount. The County argues BOTA erred in relying on Craig's appraisal because he failed to recognize (1) the value and importance of the freezer space, and (2) the divisible nature of the property. For these reasons, the County argues that the district court was correct to set aside BOTA's valuation.

### *Was BOTA's adjustment to value in order to adequately account for freezer space adequately supported or was the adjustment arbitrary?*

After finding Craig's appraisal to be reasonable, BOTA found that Craig did not adequately account for the value of the freezer/cooler space. In order to adjust for this deficiency, BOTA added $590,000 to Craig's valuation to arrive at a value of $5,500,000, citing "comparable properties with freezer/cooler space."

In rejecting BOTA's $5,500,000 valuation of the subject property and assigning a value of $7,900,000, the district court found in part that (1) BOTA's order was not supported by fact or law, and (2)

BOTA's conclusion regarding value was unreasonable, capricious, and arbitrary. See K.S.A. 77-621(c)(7) and (8).

The testimony from the appraisers presented differing views on the value contribution of the freezer/cooler space to the subject property. Kubert credited the freezer/cooler building as the primary value on campus. Kubert testified that additions to the freezer/cooler building were not burdened by the obsolescence associated with the other buildings. In contrast, Gardner and Craig concluded the value of freezer/cooler space was not significant. Craig concluded that it did not significantly contribute to the value of the subject property. Craig testified that the broker of one of the comparables with freezer/cooler space advised him that only one of the prospective buyers had been interested in the freezer/cooler space. Gardner testified that to the extent that the perishables building was 3/7 of the property, the freezer/cooler space was a significant attribute of the property, but then credited the value to the equipment and not the real estate.

In finding that the freezer/cooler space was the most valuable portion of the property, BOTA essentially rejected testimony from Craig and Gardner regarding the value of the freezer/cooler space. On reconsideration, BOTA stated:

"The Board finds that while Mr. Craig's appraisal approach was reasonable, the appraisal did not fully account for the more valuable freezer/cooler space. Based upon the comparable properties with freezer/cooler space, the Board finds that its adjustment of $590,000 more accurately estimates the additional value contributed by the freezer/cooler space."

Dillon attempts to support BOTA's valuation adjustment with two primary arguments. First Dillon argues that the "slight increase" added to Craig's valuation was consistent with Craig's testimony that the freezer/cooler space did not have any significant value and was consistent with rejecting Kubert's estimate that the freezer/cooler space contributed one-half of the total value. Second, Dillon argues that BOTA's final valuation was 30% of Kubert's valuation, a figure which accounts for fees associated with splitting the property. Craig estimated the costs for splitting up the property would include 15% holding costs, 3-6% realtor fees, and 10-15% developer fees. Dillon argues that reducing Kubert's $7.9 million

by 30% to adjust for these costs yields a valuation of approximately $5.53 million, which is within $300,000 of BOTA's ultimate valuation of $5.5 million. We view both of these arguments as *post-hoc* rationalization, neither of which were articulated by BOTA.

Unfortunately, neither of BOTA's Orders are a model for clarity in explaining the basis for the $590,000 valuation adjustment. Examining BOTA's Order carefully, however, the conceptual basis for the valuation adjustment is clearly stated: Craig's appraisal was a reasonable approach to value but it failed to adequately value the freezer/cooler space. This shortcoming caused BOTA to turn to Craig's comparable properties and make its own adjustment based on those comparables. Those comparables reflect a variance in price per square foot from $6.78 to $11.69 (unadjusted), and from $6.71 to $7.91 (adjusted). BOTA's adjustment brought the valuation per square foot of the DDC to $7.83, well within the variance shown by the evidence. Moreover, we note that BOTA's value per square foot slightly exceeds (by 50 cents per square foot) the average of Craig's adjusted comparables for freezer properties, and it represents the precise median value of *all* unadjusted comparables studied by Craig.

The decision of any administrative body should contain a finding of the pertinent facts on which it is based in order for the reviewing court to determine whether the decision reached is reasonable and lawful. *Neeley v. Board of Trustees, Policemen's & Firemen's Retirement System*, 205 Kan. 780, Syl. ¶ 5, 473 P.2d 72 (1970). As expressed in appellate decisions,

"[i]t is a general rule of administrative law that an agency must make findings that support its decision, and those findings must be supported by substantial evidence. [Citation omitted.] The necessity for findings is to 'facilitate judicial review, avoid judicial usurpation of administrative functions, assure more careful administrative consideration to protect against careless and arbitrary action, assist the parties in planning their cases for rehearing and judicial review, and keep such agencies within their jurisdiction as prescribed by the Legislature.' [Citations omitted.]" *In re Tax Appeal of Bernie's Excavating Co.*, 13 Kan. App. 2d 476, 478, 772 P.2d 822 (1989).

"Lack of expressed findings of fact may not be supplied by implication, and, where they are required, courts will not search the record in order to ascertain whether there is evidence from which the ultimate findings could be made. . . .

"[A]n agency is not required to furnish detailed reasons for its decision; however, the decision must be sufficiently clear so that a court is not required to speculate as to its basis." *Water District No. 1 v. Kansas Water Authority*, 19 Kan. App. 2d 236, 242, 866 P.2d 1076 (1994).

Despite these authorities insisting on a degree of clarity in agency factfinding and rationale, our courts have consistently affirmed agency determinations which are conceptually sound but lack some mathematical precision. Our appellate courts have consistently stated that to find a lack of substantial evidence to support the BOTA action, the decision must be so wide of the mark as to be outside the realm of fair debate. *In re Tax Appeal of Horizon Tele-Communications, Inc.*, 241 Kan. 193, 203, 734 P.2d 1168 (1987); *In re Tax Refund Application of Affiliated Property Services, Inc.*, 19 Kan. App. 2d 247, 250, 870 P.2d 1343 (1993). We have also adopted this standard for the review of orders of the Kansas Corporation Commission. See, *e.g.*, *Mobil Exploration & Producing U.S. Inc. v. Kansas Corporation Comm'n*, 258 Kan. 796, Syl. ¶ 6, 908 P.2d 1276 (1995); *Farmland Industries, Inc. v. Kansas Corp. Comm'n*, 25 Kan. App. 2d 849, 851, 971 P.2d 1213 (1999).

Here, we believe BOTA could have been more precise in stating its basis for the adjustment to value. Nevertheless, we conclude that the adjustment is not so wide of the mark as to be outside the realm of fair debate. The conceptual basis for the adjustment, Craig's comparable properties study, provides something of substance and relevant consequence which furnishes a substantial basis of fact from which the issue tendered can reasonably be resolved. *Citizens' Utility Ratepayer Bd. v. Kansas Corporation Comm'n*, 28 Kan. App. 2d 313, 316, 16 P.3d 319 (2000), *rev. denied* 271 Kan. 1035 (2001). We must conclude that BOTA's adjustment to value was adequately supported by the evidence and not otherwise arbitrary, capricious, or unreasonable.

### *Was the basis for BOTA's value otherwise flawed?*

Although BOTA's adjustment to the Craig valuation was the principal focus of the County's criticism and the district court's finding of arbitrariness, the County argues on appeal that Craig's work was otherwise flawed. First, the County argues that Craig

failed to recognize "the value and importance of the freezer cooler space." We disagree; BOTA recognized and compensated for this "flaw" by an adjustment to value. Second, the County argues that Craig failed to recognize "the divisible nature of the property." This criticism merits further discussion.

Although the County argues that Kubert's recognition of the "divisible nature of the property" was critical to value, BOTA concluded that Kubert's appraisal was a summation approach expressly prohibited by Uniform Standards of Professional Appraisal Practice (USPAP). K.S.A. 79-505 and K.S.A. 79-506 require that appraisal practice be governed by USPAP. *Board of Saline County Comm'rs v. Jensen*, 32 Kan. App. 2d 730, Syl. 4, 88 P.3d 242, *rev. denied* 278 Kan. 843 (2004). These standards are embodied in the statutory scheme of valuation, and a failure by BOTA to adhere to them may constitute a deviation from a prescribed procedure or an error of law. 32 Kan. App. 2d at 735.

USPAP Standard Rule 1-4(e) (2001) provides the following:

"An appraiser must analyze the effect on value, if any, of the assemblage of the various estates or component parts of a property and *refrain from valuing the whole solely by adding together the individual values of the various estates or component parts.*" (Emphasis added.)

The Comment to Rule 1-4(e) explains the rationale for this rule:

"Although the value of the whole may be equal to the sum of the separate estates or parts, it also may be greater or less than the sum of such estates or parts. Therefore, the value of the whole must be tested by reference to appropriate data and supported by an appropriate analysis of such data."

This Comment seems to indicate that a summation approach *may* be acceptable as long as the value of the whole is tested and supported. According to the rule, however, an appraiser *must* analyze or test the effect on value of the assemblage of the various estates or component parts.

BOTA restated its rejection of Kubert's approach in the order denying reconsideration, together with a finding that Kubert failed to adequately test his summation approach:

"The Board is not persuaded that Mr. Kubert adequately accounted for the effect of valuing each segment separately and then summing the indicated values

or tested the reasonableness of the summed value indication, which are required by USPAP Standard Rule 1-4(e)."

There is no question that Kubert violated USPAP Rule 1-4(e). In executing each of his approaches to value, Kubert segmented the property, valued each segment individually, and then added the values to get his final valuation. USPAP indicates that Rule 1-4(e) is both necessary and applicable and is not subject to departure under these circumstances. See USPAP, Statement on Appraisal Standards No. 7 (SMT-7), pp. 87-88 (2001). Moreover, when asked about any test of his summation values as required by USPAP, Kubert was unable to identify any reference to such testing in his appraisal.

On appeal, the County abandons the argument that Kubert was justified in departing from the USPAP Rule 1-4(e), and instead argues that Kubert complied with the USPAP by assessing for the highest and best use, which required an appraisal of the property in separate parcels. Indeed, Kubert insisted that in order to assess the highest and best use of the subject property, the property had to be valued by valuing individual buildings. We disagree. USPAP's Statement on Appraisal Standards No. 10 (E)(3) clearly demonstrates that highest and best use of a property intended to be divided or subject to division may not be achieved by the summation approach. The example given in USPAP is a tract development intended for eventual division and sale in individual units; despite the highest and best use for the tract, valuation may not be achieved by summation of the individual units. Although USPAP Standard Rule 1-3 (2001) does require an opinion of highest and best use, finding the highest and best use does not excuse compliance with Rule 1-4(e). We agree with BOTA that Kubert's appraisal violated USPAP, that USPAP departure was prohibited, and that no justification for the violation should be permitted by reason of the highest and best use conclusion.

In summary, applying our standard of review to BOTA's order, we are unable to conclude that BOTA erred in its valuation of the DDC. Kubert's violation of USPAP so contaminated his appraisal that it is of no utility in valuing this property, and BOTA correctly

so concluded. The district court's conclusion to the contrary was erroneous and must be reversed. BOTA's value should have been affirmed by the district court.

Other issues raised by Dillon are rendered moot by our holdings.

The district court's judgment is reversed.