No. 110,136

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

In the Matter of the Equalization Appeal of TALLGRASS PRAIRIE HOLDINGS, LLC, for the Year 2011 in SHAWNEE COUNTY, KANSAS.

SYLLABUS BY THE COURT

1.

K.S.A. 2013 Supp. 79-1460(a)(2) provides the county appraiser shall notify each taxpayer annually of the classification and appraised fair market value of the taxpayer's property. A Kansas Court of Tax Appeals (COTA) ruling that reduces the fair market value for a property pursuant to a final determination of the valuation appeals process causes the next year's fair market value to be lowered equal to the COTA-determined fair market value unless there are substantial and compelling reasons to increase the fair market value in that next year.

2.

Pursuant to K.S.A. 2013 Supp. 79-1460(a)(2), when multiple-year tax appeals are pending and the taxpayer obtains a reduced fair market valuation from COTA, the taxpayer cannot rollover the reduced fair market value to any tax year other than the next tax year. The next tax year means only the tax year immediately following the COTA-determined reduced fair market valuation.

3.

A reduction in fair market value made pursuant to K.S.A. 2013 Supp. 79-1460(a)(2) for the tax year following a successful taxpayer appeal is not a reduction due to a final determination made pursuant to the valuation appeals process for that tax year.

1

4.

Judicial review is governed by the Kansas Judicial Review Act, K.S.A. 77-601 *et seq.*, and the scope of review is controlled by K.S.A. 2013 Supp. 77-621.

5.

In Kansas, the Uniform Standards of Professional Appraisal Practice (USPAP) (1992) Standard 6 governs mass appraisals.

Appeal from Kansas Court of Tax Appeals. Opinion filed August 15, 2014. Affirmed in part, reversed in part, and remanded with directions.

*Carol B. Bonebrake*, of Cosgrove, Webb & Oman, of Topeka, for appellant Tallgrass Prairie Holdings, LLC.

*Ashley R. Heidrick*, assistant county counselor, and *Richard V. Eckert*, county counselor, for appellees Board of Shawnee County Commissioners and Shawnee County Appraiser.

Before HILL, P. J., SCHROEDER, J., and HEBERT, S.J.

SCHROEDER, J.:  Tallgrass Prairie Holdings, LLC (Tallgrass) appeals the Kansas Court of Tax Appeals' (COTA) 2011 valuation of Tallgrass' multitenant office complex (the Property) built in 2002. The Property has a prime location, and the building is also equipped with a large surgical suite leased by one of the tenants. Tallgrass seeks a fair and reasonable valuation for the property based on current market values in compliance with K.S.A. 2013 Supp. 79-1460. Originally, Tallgrass' appeal to COTA challenged the fair market valuation of its Property for tax years 2010 and 2011. While both appeals were pending before COTA, the parties mutually agreed to dismiss the 2010 tax appeal after the decision of the 2009 tax year appeal was rendered by COTA. As more fully set out in this opinion, COTA's decision establishing the fair market value of the Property for tax year 2011 is affirmed in part, reversed in part, and remanded with directions.

FACTS

The record is extensive; to put some order to it all, we will set out each step of the property valuation process resulting in this appeal.

*Property*

The Property is a large three-story building in northwest Topeka. A related, but separate, Tallgrass L.L.C. operates the surgical suite on the first floor. Another related Tallgrass L.L.C. operates medical offices on the first and second floors, with other tenants renting space on the first and third floors.

*Property Tax History*

Tallgrass has challenged Shawnee County's tax valuation of the property every year since 2005. For 2010 and 2011, the County used the same mass appraisal methodology for both years and appraised the Property at $10,870,383. As a result of Tallgrass' appeal to COTA for the 2009 tax year, COTA determined a 2009 market value of $8 million. With receipt of COTA's decision for 2009, the parties agreed the 2009 valuation should control the market value of the Property for tax year 2010 pursuant to the provision of K.S.A. 2013 Supp. 79-1460(a)(2), and the parties jointly dismissed the 2010 tax year appeal.

*2011 Tax Assessment and Informal Meeting*

After the County provided its original 2011 appraisal, the County adjusted its income approach and lowered its appraisal from $10,870,383 to $10,711,100 at the informal meeting. Tallgrass appealed the 2011 valuation notification of informal meeting results to COTA.

The County filed a motion for leave to issue discovery out of time and to order the taxpayer to allow an inspection of the Property. Over Tallgrass' objection, COTA granted the motion in part, allowing a new county appraiser to inspect the property. However, COTA limited the appraiser to a rebuttal witness and the appraisal as a rebuttal exhibit only. Additionally, COTA denied the County the right to change the value or classification for the Property based on the second appraisal. Both parties petitioned COTA to reconsider, but COTA denied their motions.

*COTA Hearing*

The parties presented their respective analyses, appraisals, and arguments to COTA. COTA was presented with three different appraisals to consider. David Meyer initially valued the Property for the County. John Dillon appraised the Property for Tallgrass. The County presented Timothy Keller's appraisal of the Property through his rebuttal testimony. We will discuss each in turn.

*Meyer Analysis*

The County relied on the testimony of David Meyer, a commercial real property specialist from the Shawnee County Appraiser's Office. Meyer was designated a registered mass appraiser by the State of Kansas Property Valuation Division (PVD), had been employed by the County Appraiser's Office for 10 years, and appraised 600 offices and 100 medical properties on an annual basis. However, Meyer was not a licensed general appraiser and had never done an appraisal that complied with the Uniform Standards of Professional Appraisal Practice (USPAP) (1992) Standards 1 and 2. Meyer did claim his appraisal was in compliance with USPAP Standard 6 and was a mass appraisal rather than a single appraisal.

4

Meyer testified the Property was in a very good location in Topeka and considered the Property in a prime, investment Class A+ location.

Meyer's initial valuation of the Property for tax year 2011 was $10,711,100. Before COTA, he lowered the value of the Property to $9,768,500. Meyer claimed the difference in recommended value stemmed from a reduced rental rate for the medical office and surgical center space in the Property.

Meyer used the usable square footage of the Property for the income approach calculation in his appraisal. Meyer defined usable square footage as the floor space of the Property, minus vertical penetrations such as stairwells, elevators, and common areas. For the sales approach, he used the net rentable square footage, which did include the common areas. To determine fair market value, Meyer considered what the Property was worth on the open market. Meyer considered the Property's current use to be its highest and best use.

*Dillon Analysis*

Tallgrass' expert appraiser was John Dillon, a licensed general real estate appraiser who had been doing appraisals in the Kansas City area since the early 1980's. Dillon appraised all types of property but mainly worked with commercial property. Dillon first appraised the Property for Tallgrass in 2006 and had prepared other appraisals on the Property. Dillon was tasked with estimating the market value of the Property for presentation before COTA. Dillon claimed he quantified the physical factors and market data for the Property and believed the market for the Property did not extend beyond the immediate Topeka market. Dillon considered the Property a second tier property, not a Class A or Class A+ location.

5

Dillon's analysis was aimed at finding market value, as defined by the Federal Register and USPAP. However, Dillon admitted that this definition contained some minor differences from the Kansas definition of fair market value. Dillon based his analysis on the rentable area of the Property, or the total square footage of the Property, minus vertical penetrations such as stairwells or elevators, but including common areas. Dillon believed this calculation to be a market-wide method of establishing how rental rates per square foot for office and medical office space are established. Ultimately, Dillon determined the valuation for the Property was $7.6 million.

*Keller Analysis*

The County presented Timothy Keller, a state licensed certified general real estate appraiser with around 20 years of appraisal experience, as a rebuttal witness. Keller appraised all types of commercial and residential properties, including offices and medical offices, mainly in the Topeka, Lawrence, and Kansas City areas.

Keller testified the County asked him to perform an appraisal of the Property to determine the market value of the Property. Keller's appraisal was admitted, and he defined market value in accordance with Kansas statutes. Keller labeled the Property as a Class A property, located in a competitive neighborhood and market location. Keller claimed the highest and best use for the Property would be its current use.

Like the other appraisers, Keller used cost, sales, and income approaches to establish the value of the Property. Keller appraised the Property at $10,250,000.

*COTA Ruling*

COTA stated the County determined the Property contained 12,139 square feet of office space, 50,031 square feet of medical office space, and 12,533 feet of surgical space, for a total usable square footage of 74,730.

COTA first addressed Tallgrass' claim that the County failed to comply with K.S.A. 2013 Supp. 79-1460(a)(2). Tallgrass argued the Property's 2010 tax valuation was reduced pursuant to the valuation appeals process; therefore, under the statute, the County was required to present substantial and compelling reason for the Property's increased 2011 tax valuation. Tallgrass claimed the County failed to meet that burden and that the increased valuation was therefore inappropriate.

COTA agreed that under K.S.A. 2013 Supp. 79-1460(a)(2) the County would have been prevented from increasing the Property's tax valuation following the 2010 reduction if the 2010 reduction had been "due to a final determination made pursuant to the valuation appeals process." However, the County reduced the Property's 2010 appraised value based on the results of the 2009 tax appeal, and the 2010 appeal was never submitted to COTA. Thus, COTA ruled the Property's 2010 tax valuation was not "'reduced due to a final determination pursuant to the valuation appeals process'" and therefore the requirements of K.S.A. 2013 Supp. 79-1460(a)(2) were inapplicable to the Property's 2011 tax valuation.

COTA next discussed the law governing ad valorem taxes in Kansas. Under the Kansas Constitution, Article 11, § 1(a) and K.S.A. 79-101, all real and personal property in Kansas is subject to taxation on a uniform and equal basis unless specifically exempted. COTA classified the Property as commercial use property; and pursuant to K.S.A. 2013 Supp. 79-1609, COTA determined the County had the "duty to initiate the production of evidence to demonstrate, by a preponderance of the evidence, the validity

7

and correctness" of a fair market value determination. Under the same statute, COTA noted no presumption exists in favor of the county appraisal with respect to the validity and correctness of such a determination.

Tallgrass questioned whether the County's evidence complied with USPAP, particularly regarding scope-of-work requirements. COTA noted all county appraisers were required to perform appraisals in conformity with USPAP Standard 6, which governs the development and reporting of mass appraisals as the approved method for ad valorem taxation in Kansas. COTA stated its duty was to render decisions based on "substantial competent evidence in light of the record as a whole," pursuant to K.S.A. 2013 Supp. 77-621(c).

Here, COTA determined Meyer provided "credible testimony" regarding the characteristics and investment class of the Property and confirmed the County considered all factors listed in K.S.A. 2013 Supp. 79-503a in arriving at its valuation. COTA also held Meyer relied on a computer-assisted mass appraisal report with supporting documentation in reaching his valuation. COTA therefore determined there was "no evidence in the record" that the County performed a single-property appraisal, as contended by Tallgrass. Thus, COTA held the County's presentation provided "substantial competent evidence support for valuation."

In determining the valuation of the Property, COTA relied heavily on the income approach because the Property was an income producing property, both parties relied on the income approach, and COTA determined the parties' various income approaches provided the best indicia of the Property's value. COTA found the County's assessment of potential gross income to be supported by comparable market rental data after adjustments for escrow rent. Because Dillon's appraisal failed to make escrow rent adjustments, COTA found his rental rate to be "significantly understated."

8

However, COTA found both Meyer's and Dillon's expense rate determinations to be in error. The County failed to give adequate consideration to the Property's actual expenses, while Tallgrass failed to determine if the Property's actual expenses were consistent with the market. According to COTA, an appraiser should estimate the income stream that would be produced in the highest and best use under "typical management" because the property, not the current management, is being valued. Thus, COTA determined Keller's expense rate determination, which "included consideration of the subject property's actual operating expenses based on a review of expenses from comparable area properties" to be most reflective of the market.

COTA found the County's determination that the Property was an A+ investment class for the Topeka market to be supported by the age of the Property, the quality of finish, and its location in Topeka's premier commercial area. COTA therefore rejected Dillon's contention the Property was a second tier property. COTA further held Dillon's capitalization rate determination, when "properly arrayed for comparability," supported a 9% capitalization rate.

Based on these findings, COTA concluded an income approach utilizing the County's income approach inputs, including rental, vacancy, collection, and capitalization rates, coupled with Keller's operating expense rate, produced the best indicator of fair market value for the Property. Thus, after implementing this change to the County's income approach, COTA reached a final appraised fair market value of $9,431,560 for tax year 2011.

Tallgrass filed a motion asking COTA to reconsider, and COTA denied the motion. Tallgrass timely appeals.

ANALYSIS

Tallgrass raises five issues on appeal. First, Tallgrass claims COTA erred in interpreting K.S.A. 2013 Supp. 79-1460(a). Second, Tallgrass argues COTA erred in adopting the County's valuation by implicitly finding the County did not have the burden of proof. Third, Tallgrass states that by relying on the County's methodology, COTA produced a value contrary to USPAP Standards and Kansas law. Fourth, Tallgrass claims COTA erred in making findings of fact that are not supported by substantial evidence. Finally, Tallgrass argues COTA acted in an arbitrary, capricious, and unreasonable manner when it failed to decide whether Tallgrass had been subject to intentional and systematic excessive valuations. As reflected below, we find COTA should be affirmed in part, reversed in part, and remanded with directions.

*Kansas Judicial Review Act*

Tallgrass' appeal of the COTA decision is governed on review by the Kansas Judicial Review Act (KJRA), K.S.A. 77-601 *et seq*. An agency decision is in error if:

> "(i) The agency has erroneously interpreted or applied the law, K.S.A. 2009 Supp. 77-621(c)(4); (ii) the agency has engaged in an unlawful procedure or has failed to follow prescribed procedure, K.S.A. 2009 Supp. 77-621(c)(5); (iii) the agency action is based on a determination of fact, made or implied by the agency, that is not supported by evidence that is substantial when viewed in light of the record as a whole, K.S.A. 2009 Supp. 77-621(c)(7); or (iv) the agency action is otherwise unreasonable, arbitrary, or capricious, K.S.A. 2009 Supp. 77-621(c)(8)." *In re Tax Appeal of Brocato*, 46 Kan. App. 2d 722, Syl. ¶ 2, 277 P.3d 1135 (2011).

The KJRA defines the scope of judicial review of state agency actions unless the agency is specifically exempted from application of the statute. K.S.A. 2013 Supp. 77-603(a); *In re Tax Appeal of LaFarge Midwest*, 293 Kan. 1039, 1043, 271 P.3d 732

10

(2012). On appeal, the burden of proving the invalidity of the agency action rests on the party asserting such invalidity. K.S.A. 2013 Supp. 77-621(a)(1). Specific standards of review under the KJRA for each of Tallgrass' claims will be discussed as the issue is analyzed.

*Did COTA Err in Interpreting K.S.A. 2013 Supp. 79-1460(a)(2)?*

The County initially provided identical appraisal values for the Property for tax years 2010 and 2011. With receipt of COTA's 2009 tax ruling while the 2010 and 2011 appeals were pending, the County lowered the 2010 value equal to COTA's 2009 value of the Property at $8,000,000. Tallgrass now argues application of K.S.A. 2013 Supp. 79-1460(a)(2) requires COTA also to value the Property for 2011 at $8,000,000. COTA denied Tallgrass' request. Tallgrass claims COTA misinterpreted the statute in so ruling. We find COTA correctly applied K.S.A. 2013 Supp. 79-1460(a)(2).

*Standard of Review*

Interpretation of a statute is a question of law over which appellate courts exercise unlimited review. *Jeanes v. Bank of America*, 296 Kan. 870, 873, 295 P.3d 1045 (2013). When a statute is plain and unambiguous, an appellate court does not speculate as to the legislative intent behind it and will not read into the statute something that is not readily found in it. *In re Tax Appeal of Burch*, 296 Kan. 713, 722, 294 P.3d 1155 (2013). The courts must construe statutes to avoid unreasonable or absurd results and presume the legislature does not intend to enact meaningless legislation. *Northern Natural Gas Co. v. ONEOK Field Services Co.*, 296 Kan. 906, 918, 296 P.3d 1106, *cert. denied* 134 S. Ct. 162 (2013).

Statutes imposing a tax must be interpreted strictly in favor of the taxpayer. However, tax exemption statutes are "interpreted strictly in favor of imposing the tax and

11

against allowing an exemption for one who does not clearly qualify for the exemption." *In re LaFarge Midwest*, 293 Kan. at 1045.

The Kansas Supreme Court no longer extends deference to an agency's statutory interpretation. 293 Kan. at 1044; *Hill v. Kansas Dept. of Labor*, 292 Kan. 17, 21, 248 P.3d 1287 (2011) (noting that the doctrine of operative construction has lost favor). Thus, we will proceed with no deference to COTA's interpretation of K.S.A. 2013 Supp. 79-1460(a)(2).

"'In the absence of valid statutory authority, an administrative agency may not, under the guise of a regulation or order, substitute its judgment for that of the legislature. It may not . . . modify, alter, or enlarge the legislative act which is being administered.'" *NCAA v. Kansas Dept. of Revenue*, 245 Kan. 553, 557, 781 P.2d 726 (1989).

*Application of K.S.A. 2013 Supp. 79-1460(a)(2)*

The statute provides in relevant part:

"(a) The county appraiser shall notify each taxpayer in the county annually on or before March 1 for real property and May 1 for personal property, by mail directed to the taxpayer's last known address, of the classification and appraised valuation of the taxpayer's property, except that, the valuation for all real property shall not be increased unless: . . . (2) for the taxable year next following the taxable year that the valuation for real property has been reduced due to a final determination made pursuant to the valuation appeals process, documented substantial and compelling reasons exist therefor and are provided by the county appraiser."

The County admitted to using and rolling over its 2010 tax year valuation of $10,870,383 to tax year 2011. Tallgrass argues K.S.A. 79-501 and K.S.A. 2013 Supp. 79-503a dictate the County is required to annually appraise real property at its fair market

12

value, and the County's identical valuations in 2010 and 2011 demonstrated nothing in the market required a different value for tax years 2010 and 2011. Thus, Tallgrass argues when the County lowered the Property's 2010 valuation to $8,000,000 based on COTA's 2009 tax year ruling, the County needed to offer evidence to demonstrate a change in market conditions to justify an increased 2011 tax valuation. Tallgrass claims the County failed to provide any evidence to support such an increase in valuation from tax year 2010 to 2011, thus violating K.S.A. 2013 Supp. 79-1460(a)(1) and (a)(2).

Tallgrass notes K.S.A. 2013 Supp. 79-1460(a)(2) imposes additional requirements on a county before it increases the valuation of real property following a taxable year where the valuation was reduced due to a final determination made pursuant to the valuation appeals process. Here, Tallgrass claims the County assigned the same initial values to the Property for 2010 and 2011 resulting in Tallgrass' appealing both years' fair market value. While the appeal for both years was pending before COTA, the parties agreed to a reduced 2010 valuation based on COTA's decision establishing the 2009 valuation. At the subsequent COTA hearing for tax year 2011, Tallgrass argued to COTA that the County failed to provide substantial and compelling reasons why its recommended 2011 valuation was higher than the reduced 2010 valuation. COTA disagreed, stating K.S.A. 2013 Supp. 79-1460(a)(2) was inapplicable because "the 2010 appeal was never submitted to this Court for adjudication."

Tallgrass now claims COTA erred in so ruling because nothing in K.S.A. 2013 Supp. 79-1460(a)(2) indicates that the statute is only applicable if the relief in the prior year resulted from a COTA adjudication. Tallgrass argues the statute is silent as to who must make the final value determination in the prior year. Tallgrass argues the legislature failed to specify at which level in the valuation process the relief must occur and this court must interpret K.S.A. 2013 Supp. 79-1460(a)(2) such that a final valuation determination can be made at any level of the valuation appeals process. Under Tallgrass' interpretation, the County's reduction of the 2010 tax valuation would require the County

13

to have provided substantial and compelling reasons to increase the 2011 tax valuation. Tallgrass argues the County failed to make such a showing and therefore claims COTA misinterpreted and misapplied both K.S.A. 2013 Supp. 79-1460(a)(1) and (a)(2).

Another panel of this court in *In re Equalization Appeal of California Crossing*, No. 106,259, 2012 WL 2620997, at *6 (Kan. App. 2012) (unpublished opinion), held that "K.S.A. 2011 Supp. 79-1460(a)(2) requires the County appraiser to apply the same value to a year *following a successful tax appeal*." (Emphasis added.) We find this interpretation of the statute is persuasive. The County was required to lower the 2010 tax valuation in accordance with K.S.A. 2013 Supp.79-1460(a)(2). It does not matter how the parties dealt with the procedure of reducing the value for 2010, as the County was statutorily required to reduce the value equal to the 2009 value. By its plain language, the statute applies only to the next tax year, not year after year, if an appeal of subsequent tax years is pending. Tallgrass' argument is counterintuitive to the statutory language.

This issue arose with the passage of time given appeals from three tax years were all pending when the first year (2009) was resolved. We hold the COTA-determined 2009 reduced fair market valuation only applies to the next tax year, *i.e.*, tax year 2010. Tax year 2011 becomes a new independent tax valuation event. "Next" is defined as: "Immediately following, as in time, order, or sequence." The American Heritage Dictionary 1189 (5th ed. 2011). By the very definition of "next" year, 2011 is not the next tax year after the tax year 2009 valuation was determined.

In this context, COTA properly found the 2010 tax valuation was subject to application of K.S.A. 2013 Supp. 79-1460(a)(2) and not by "a final determination made pursuant to the valuation appeals process." When COTA established the 2009 market value (which was the applicable fair valuation determination), that value affected 2010's fair market valuation and not 2011's fair market valuation for the Property.

14

*Did COTA Err in Adopting the County's Valuation by Implicitly Finding the County Did Not Have the Burden of Proof?*

In addition to the requirements of K.S.A. 2013 Supp. 79-1460(a), Tallgrass argues the County had the burden of demonstrating the validity and correctness of its determination of value pursuant to K.S.A. 2013 Supp. 79-1609. Tallgrass claims the County failed to sustain that burden, as evidenced by COTA's finding that the County's expense rate was in error. In parallel arguments, Tallgrass claims COTA's adoption of the County's valuation methodology and inputs were not based on substantial competent evidence and as a result COTA improperly shifted the burden of proof by presuming a valuation containing an error was nevertheless valid and correct, requiring Tallgrass to prove the valuation was not valid and correct. Thus, to determine if COTA misinterpreted or misapplied K.S.A. 2013 Supp. 79-1609, we will also review the facts presented. As discussed below, we find Tallgrass' argument fails.

*Standard of Review*

Interpretation of K.S.A. 2013 Supp. 79-1609 involves the same review as discussed in the prior section, and the statute must be construed in favor of the taxpayer without deference to the agency's interpretation. See *In re LaFarge Midwest*, 293 Kan. at 1044-45; *Hill*, 292 Kan. at 21.

"In light of the record as a whole" is statutorily defined by K.S.A. 2013 Supp. 77-621(d) as meaning

> "that the adequacy of the evidence in the record before the court to support a particular
> finding of fact shall be judged in light of all the relevant evidence in the record cited by any
> party that detracts from such finding as well as all of the relevant evidence in the record,
> compiled pursuant to K.S.A. 77-620, and amendments thereto, cited by any party that

15

supports such finding, including any determinations of veracity by the presiding officer who personally observed the demeanor of the witness and the agency's explanation of why the relevant evidence in the record supports its material findings of fact. In reviewing the evidence in light of the record as a whole, the court shall not reweigh the evidence or engage in de novo review."

Although not statutorily defined, "substantial evidence" refers to "'evidence possessing something of substance and relevant consequence to induce the conclusion that the award was proper, furnishing a basis [of fact] from which the issue raised could be easily resolved.'" *Saylor v. Westar Energy, Inc.*, 292 Kan. 610, 614, 256 P.3d 828 (2011).

### *Did COTA Misinterpret or Misapply K.S.A. 2013 Supp. 79-1609?*

To support its claim, Tallgrass points to *Garvey Grain, Inc. v. MacDonald*, 203 Kan. 1, 14, 453 P.2d 59 (1969), where the Kansas Supreme Court held that a county's valuation which fails to consider all statutory factors is invalid. These statutory factors are listed in K.S.A. 2013 Supp. 79-503a, and Tallgrass particularly notes K.S.A. 2013 Supp. 79-503a(g), which requires a county appraiser using an income approach valuation to consider "earning capacity as indicated by lease price, by capitalization of net income or by absorption or sell-out period." Tallgrass argues implicit in this statutory language is the consideration of reasonable operating expenses. See *In re Tax Refund Application of Affiliated Property Services, Inc.*, 19 Kan. App. 2d 247, 249, 870 P.2d 1343 (1993) (under the income approach, net income of property is determined by subtracting reasonable operating expenses from the market rental potential of any structures on the property). Tallgrass claims the County failed to consider Tallgrass' reasonable operating expenses; thus, COTA misinterpreted and misapplied K.S.A. 2013 Supp.79-1609.

Tallgrass' interpretation of COTA's ruling is inaccurate. COTA adopted Meyer's income approach valuation for every aspect of its own valuation except expense rates.

16

COTA ruled Meyer's expense calculation failed to give adequate consideration to the Property's actual expenses. COTA instead utilized the Keller appraisal, saying it "included consideration of the subject property's actual operating expenses based on a review of expenses from comparable area properties" to be most reflective of the market. COTA properly considered operating expenses in its valuations, finding Keller's operating expense calculations were valid by a preponderance of the evidence standard. COTA clearly considered the operating expense analysis of all three experts. Without reweighing the evidence, substantial evidence exists when viewed in light of the evidence as a whole to support COTA's reliance on Keller's expense rate valuation coupled with Meyer's income analysis to reach the fair market valuation COTA found.

Therefore, COTA did not shift the burden; it merely relied on the expense rate provided by Keller, the County's rebuttal expert witness, rather than either of the expense rates provided by Meyer or Dillon. While COTA denied the County the use of Keller's appraisal during its case-in-chief to adjust its valuation, his testimony was allowed and relevant for rebuttal purposes. Tallgrass provides no authority why COTA could not utilize the relevant testimony of the County's rebuttal witness. Tallgrass has failed to meet its burden in showing how COTA improperly applied K.S.A. 2013 Supp. 79-1609. See K.S.A. 2013 Supp. 77-621(a)(1); K.S.A. 2013 Supp 77-621(c)(4).

*Did COTA's Valuation Violate USPAP Standards and Kansas Law?*

Tallgrass argues Meyer's appraisal was the result of a valuation by summation in violation of USPAP Standards and Kansas law. Tallgrass appears to be arguing COTA violated K.S.A. 2013 Supp. 77-621(c)(5) in doing so. Tallgrass claims Meyer's appraisal divided the three-story building into its three component parts based on tenant use and then added all three parts to get the final valuation. As reflected below, Tallgrass' argument fails.

17

*Standard of Review*

When determining the validity of an assessment of real property for uniformity and equality in the distribution of taxation burdens, the essential question is whether the standards prescribed in K.S.A. 2013 Supp. 79-503a have been considered and applied by taxing officials. *Krueger v. Board of Woodson County Comm'rs*, 31 Kan. App. 2d 698, 702, 71 P.3d 1167 (2003), *aff'd* 277 Kan. 486, 85 P.3d 686 (2004).

To the extent the issue involves statutory interpretation, tax exemption statutes are interpreted strictly in favor of imposing the tax and against allowing an exemption for one who does not clearly qualify, without deference to the agency's statutory intpretation. See *In re LaFarge Midwest*, 293 Kan. at 1044-45.

*USPAP Standards*

Kansas law requires county appraisals be performed in accordance with generally accepted appraisal standards promulgated by the appraisal standards board of the Appraisal Foundation in effect on March 1, 1992, and consistent with the definition of fair market value in K.S.A. 2013 Supp. 79-503a. See K.S.A. 79-504; K.S.A. 79-505; K.S.A. 79-506. The PVD's Directive No. 92-006 further specifies that a county's appraisal comply with the 1992 edition of USPAP, Sections 2 and 6.

Under USPAP Standards, an appraiser should refrain "from estimating the value of the whole by adding together the individual values of the various estates or components." USPAP Standards Rule 1-4(e), p. 12 (1992); USPAP Standards Rule 6-5(d), p. 33 (1992). The Comment to USPAP Standards Rule 1-4(e) indicates a summation approach *may* be acceptable as long as the value of the whole is tested and supported. "According to the rule, however, an appraiser *must* analyze or test the effect on value of the assemblage of the various estates or component parts." *In re Tax Appeal of Dillon*

18

*Stores*, 42 Kan. App. 2d 881, 890, 221 P.3d 598 (2009). No such language exists in the Comment to USPAP Standards Rule 6-5(d). See USPAP Standard Rule 6-5(d), Comment, p. 33.

USPAP Standards have been embodied in the statutory scheme of valuation, and COTA's failure to adhere to these standards may constitute a deviation from prescribed procedure or an error of law. *Board of Saline County Comm'rs v. Jensen*, 32 Kan. App. 2d 730, Syl. ¶¶ 5-6, 88 P.3d 242, *rev. denied* 278 Kan. 843 (2004). Panels of this court have found an aggregate (summation) sales comparison approach to violate USPAP. See *In re Dillon Stores*, 42 Kan. App. 2d at 890-91; *Jensen*, 32 Kan. App. 2d at 735-36 (aggregated sales approach not permissible in any appraisal context).

Here, the County relied on Meyer's income approach methodology, which considered the three different ways the tenants used the Property. Meyer then applied the relevant rental rates to the useable square footage to determine potential gross and effective income, subtracted operating expenses, and calculated the net operating incomes. Meyer divided the net operating income by the calculated capitalization rate to determine the value of the Property. Tallgrass argued the County's valuation methodology was a valuation by summation, which was a single-property appraisal that violated USPAP Standards. COTA disagreed, holding "nothing in the record suggests that the County's valuation is premised on an appraisal approach expressly prohibited by USPAP." COTA subsequently reached its final valuation by utilizing Keller's expense rate analysis with Meyer's income approach.

Tallgrass argues COTA's ruling and failure to adhere to USPAP Standards constitutes an error as a matter of law. While Tallgrass agrees Meyer's expense rate analysis was mistaken, Tallgrass argues COTA erred in adopting Keller's analysis. According to Tallgrass, Keller failed to account for property-specific expenses such as full-time management, an integrated telephone system, two elevators, and a conference

19

room when determining his expense rate. Tallgrass argues Dillon's analysis, on the other hand, gave due consideration to property-specific expenses in determining market expense rates for the Property.

In fair market value cases where the mass appraisal system is used to assess the value of real property, as it was here, Kansas law dictates that Standard 6 of the USPAP be applied to the resulting appraisal, not Standards 1 and 2. See *In re Equalization Appeal of Johnson County Appraiser*, 47 Kan. App. 2d 1074, Syl. ¶¶ 10-11, 283 P.3d 823 (2012). Standard 6 governs mass appraisal practice and states that an appraiser must employ "generally accepted methods and techniques necessary to produce and communicate credible appraisals." USPAP Standard 6, p. 29.

Additionally, we note PVD Directive No. 92-006 indicates the County is not held to Standard 1, even though Tallgrass argues Standard 1-4(c) applies. Standard 1 applies to single-property appraisals, not mass appraisals. Here, COTA found this was a mass appraisal process governed by Standard 6, not Standard 1. We find it unnecessary to discuss Standard 1 or 1-4(c) as they are separate and distinguished standards from the mass appraisal process under Standard 6.

Tallgrass states the value of the whole should not be estimated by adding together individual values of component parts. Tallgrass emphasized the County's valuation methods did just that; therefore, Tallgrass claims COTA erred in relying on the County's methodology, as it did not comply with USPAP Standards.

We have found two cases discussing the issue of valuation by summation with any depth in Kansas: *Jensen* and *In re Dillon Stores*. *Jensen* involved the Board of Tax Appeals' (BOTA) approval of the county conducting a separate sales comparison approach on each fourplex built on a single parcel containing thirty 30 units, then adding up the individual value of each fourplex to get the value of the entire parcel. The Court of

Appeals panel rejected this assessment as being violative of USPAP Standards Rule 1-4(e), noting that Standards Rule 6-5(d), which governs mass appraisals, also prohibits such a valuation. The panel determined these Standard Rules furthered its conclusion that "the practice [of aggregated sales approaches] is simply not permissible in any appraisal context." 32 Kan. App. 2d at 736. The panel further rejected the county's argument that BOTA referenced alternate cost and income approaches to support its finding, as the panel emphasized BOTA's final decision relied exclusively on the sales comparison as its best estimate of fair market value. 32 Kan. App. 2d at 736.

Similarly, in *In re Dillon Stores*, a panel of this court again rejected summation valuations. The subject property consisted of 10 separate but contiguous buildings located on an 84-acre site. The county valued each building separately and summed the values to reach its final valuation. The panel held there was "no question" the county's valuation violated USPAP Standards Rule 1-4(e) because the county segmented the property, valued each segment individually, and added the values to get the final valuation. 42 Kan. App. 2d at 891. On appeal, the county argued it had complied with the USPAP by assessing the value for its highest and best use, "which required an appraisal of the property in separate parcels." The panel disagreed, pointing out that "USPAP's Statement on Appraisal Standards No. 10 (E)(3) clearly demonstrates that highest and best use of a property intended to be divided or subject to division may not be achieved by the summation approach." *In re Dillon Stores*, 42 Kan. App. 2d at 891.

In both *In re Dillon Stores* and *Jensen*, the properties were valued by aggregating the values of separate structures on a large parcel of land. See *In re Dillon Stores*, 42 Kan. App. 2d at 883-84; *Jensen*, 32 Kan. App. 2d at 731-34. USPAP's Statement on Appraisal Standards No. 10 (E)(3) (2001), which the panel in *In re Dillon Stores* relied upon, warns against summation of multiple unit values in determining the value of an entire property. USPAP Statement on Appraisals Standards No. 10(E)(3), p. 108 is now retired and not applicable. Here, the County reached its valuation of a single, multi-tenant

21

property through calculating the three different types of tenant use in the Property. The County correctly argues the USPAP Standards and the caselaw in Kansas regarding valuation by summation focus on the prohibition of using individual buildings as component values. With this understanding, the USPAP standards allow an appraiser to calculate the value of a single structure through a total valuation of the structure's different uses.

Here, it was not wrong to consider the different uses of a single property because different tenant finishes result in different rental rates, costs, expenses and values. If one considers only the cheapest rental income to determine value, then the fair market value would be too low. Likewise, if one considered only the highest rental income to determine value, the fair market value would be too high. There must be a balanced valuation approach in compliance with USPAP Standard 6 for mass appraisals and that is accomplished by looking at all the ways in which the property is used and designed to be used.

We find USPAP Standards Rule 6-5(d) applies only when multiple structures are valued separately to reach an aggregate valuation of an entire property. Under this interpretation, COTA did not err in utilizing a combination of Meyer's and Keller's appraisals to reach a reasonable fair market value for the Property.

Tallgrass argues a panel of this court held USPAP Standards Rule 6-5(a)(v) (1992) provides that when "necessary for credible assignment results, the appraiser must assess value by *potential earnings*, including rentals, expenses, interest rates, capitalization rates, and *vacancy data*." *In re Tax Appeal of Brocato*, 46 Kan. App. 2d 722, 730, 277 P.3d 1135 (2011). An analysis of *Brocato* reveals the panel actually quoted the 2008 USPAP Standards, not the 1992 USPAP Standards. Per Kansas statute, we must apply the 1992 USPAP Standards. There is no USPAP Standard Rule 6-5(a)(v) (1992). Thus, Tallgrass' reliance on *Brocato* to support property-specific expenses fails.

22

*Kansas Law Standards*

This second standard requires that we consider Kansas law. Under K.S.A. 2013 Supp. 79-503a, an appraisal of real property for ad valorem tax purposes must conform to generally accepted appraisal procedures which are consistent with the definition of fair market value. Tallgrass argues Meyer violated this statute by relying on old leases without adjusting the rates to current market or eliminating the cost of excess tenant improvement. Tallgrass cites to *In re Equalization Appeal of Prieb Properties*, 47 Kan. App. 2d 122, 132-33, 275 P.3d 56 (2012), where a panel of this court rejected a county's argument that rates from a built-to-suit lease reflect market rates at any time during the lease.

Instead, Tallgrass argues market rent should be determined by analyzing the current real estate market and the effective rent, which the Appraisal Institute's textbook, The Appraisal of Real Estate, p. 454 (13th ed. 2008), defines as the rental rate after adjusting for "free rent, excessive tenant improvements, moving allowances, lease buyouts, cash allowances, and other leasing incentives." Because COTA adopted the County's rental rates, Tallgrass argues COTA erroneously relied on an unadjusted and untimely market rental rate, contrary to K.S.A. 2013 Supp. 79-503a.

According to Tallgrass, Kansas law also prohibits a use valuation except for agricultural land. Tallgrass supports its claim with *Board of Douglas County Comm'rs v. Cashatt*, 23 Kan. App. 2d 532, 545-46, 933 P.2d 167 (1997), where a panel of this court held that when the highest and best use of a property is commercial, COTA's valuation of the property through its actual residential use is contrary to law. Here, Tallgrass claims the County based its income approach on the actual use of the property, contrary to Kansas law.

23

In *Cashatt*, another panel of this court concluded that residential land must be valued at fair market value even if it resulted in some residential land being valued higher than others due to its suitability for commercial use. Doing so would not result in unequal or nonuniform taxation. 23 Kan. App. 2d at 545. The panel agreed with the county's valuation of a home as a commercial property because it would be the property's highest and best use. See 23 Kan. App. 2d at 537, 539-40. Thus, focusing only on the present use of the property for valuation without regard for fair market value failed to account for all the factors in K.S.A. 2013 Supp. 79-503a. See 23 Kan. App. 2d at 545. Here, each of the relevant factors listed in K.S.A. 2013 Supp. 79-503a were considered; therefore, neither the County nor COTA deviated from USPAP Standards or the law.

Tallgrass claims that Meyer relied on leases that had been in place for more than 10 years is unfounded in the record. The older leases Meyer considered were owner leases that were removed from his consideration, in keeping with COTA's 2009 order. Meyer considered both current nonowner leases and leases on comparable properties. Dillon's appraisal considered only property-specific lease rates and asking rates of vacant space.

Under Article 11, § 12 of the Kansas Constitution, agricultural property is the only classification of property in Kansas that is given a property tax value based on the use value. Kan. Const. art. 11, § 12; see *Cashatt*, 23 Kan. App. 2d at 540. ""Use Value" can have more than one meaning; however, it is generally conceded, as it relates to agricultural land, that "Use Value" represents a value based on the net income that the land is capable of producing, assuming typical management practices.'" *In re Tax Protest of Ann W. Smith Trust*, 272 Kan. 1396, 1408, 39 P.3d 66 (2002). Here, there is no evidence the County valued the Property at what it was "capable" of producing. Every tenant rental rate was calculated and evaluated at what the County determined to be fair market value, in keeping with the requirements of K.S.A. 2013 Supp. 79-503a. Tallgrass fails to point to any specific lease or calculation which would be contrary to K.S.A. 2013

24

Supp. 79-503a. Thus, Tallgrass has failed to meet its burden. See K.S.A. 2013 Supp. 77-621(a)(1). COTA did not base its valuation on an unconstitutional "use value" appraisal method, nor did it rely on untimely and unadjusted lease rates as market rates, contrary to K.S.A. 2013 Supp. 79-503a.

*Were COTA's Findings of Fact Supported by Substantial Evidence?*

COTA held an income approach using the County's inputs with Keller's operating expense rates was the best indicator of value for the Property. Tallgrass argues COTA's order does not contain detailed findings which explain its rationale for selecting the County's income approach methodology and claims the County's methodology and inputs are not supported by and are contrary to the substantial evidence of the case. We disagree and hold that COTA's decision is supported in light of the record as a whole.

*Standard of Review*

As amended, the KJRA now defines substantial evidence "in light of the record as a whole" to include the evidence both supporting and detracting from an agency's finding. Courts must now determine whether the evidence supporting the agency's factual findings is substantial when considered in light of all the evidence. K.S.A. 2013 Supp. 77-621(d); see *Redd v. Kansas Truck Center*, 291 Kan. 176, 183, 239 P.3d 66 (2010). In reviewing evidence in light of the record as a whole, the court shall not reweigh the evidence or engage in de novo review. K.S.A. 2013 Supp. 77-621(d).

*Were COTA's Findings Supported by Substantial Evidence in Light of the Record as a Whole?*

The income capitalization approach analyzes a property's capacity to generate future benefits and capitalizes that net income stream into an indication of present value.

25

The Appraisal of Real Estate, p. 445. The accuracy of the approach depends upon the accuracy of the inputs such as size, rental income, vacancy, collection, operating expenses, and cap rates. Tallgrass correctly argues that if one or more inputs are incorrectly calculated, the resulting value will be in error.

*Square feet calculation*

Tallgrass argues Meyer based his findings on incorrect assumptions of how the tenants used the office space. COTA adopted Meyer's inputs without adjustment and determined several tenants were using medical office space when Tallgrass claims they should have been considered at a regular office rate. To support its claim, Tallgrass points to the testimony of one of the owners and treasurer of Tallgrass, who gave uncontroverted testimony demonstrating these tenants were not medical providers. Based on this testimony, Tallgrass calculated that COTA overvalued 11,388 square feet of non-medical space at a rental rate difference of $2 per square foot. Thus, Tallgrass urges the panel to recalculate the net operating income with 38,643 square feet of medical office space, 23,527 square feet of office space, and 12,533 square feet of surgical space, for a total square footage of 74,703.

The County concedes COTA made a mathematical error in allocating the square footage between office, medical, and surgical space. The County agrees with Tallgrass' adjustment to the square footage of office, medical, and surgical space except for Tallgrass' inclusion of 122 square feet in office space for MC Concessions, which Meyer did not use in his indication of value. Thus, the County asks the panel to remand the case with instructions to recalculate the fair market value with the office and medical square footage the parties now agree is correct or, in the alternative, to recalculate the fair market value with the corrected numbers.

With the exception of MC Concessions, the parties agree on how the Property rental area should be calculated and valued, pursuant to the rest of COTA's holding. However, when reviewing the County's calculation of the square footage of the Property, the County erred in its total calculation of square footage. The County posited the Property had 74,703 square feet of usable space based on the rent rolls. COTA relied on this number in its ruling, as did Tallgrass in its appellate brief. Upon further review, the total square footage, excluding MC Concessions, only adds to 74,508 square feet.

The parties' agreement on how the rental area should be calculated indicates COTA made a mathematical error in failing to adjust the rental area to match its ruling, not an error in interpreting the law itself. The parties also failed to notice that the County's calculation of total usable area was slightly off until Tallgrass indicated as much in its reply brief. Because both miscalculations are mathematical in nature, not indicative of a misinterpretation of law or the evidence, we must remand back to COTA with instructions to recalculate the 2011 valuation.

In calculating the final valuation, Tallgrass argues MC Concessions should be included in the total square footage calculation, as this addition makes the actual number from the rent roll closer to what COTA relied upon. Despite Tallgrass' claim, Meyer clearly testified MC Concessions was not considered in his appraisal. Because COTA relied on Meyer's appraisal and we cannot reweigh evidence, MC Concessions should not be considered in the calculation on remand.

On remand, COTA shall utilize the lease rate previously determined for each of the three types of spaces for office, medical, and surgical. COTA shall recalculate the value of the property by correctly allocating the total square feet of the building of 74,508 square feet based on the agreed-upon space allocation between office, medical, and surgical spaces. Again, the space used by MC Concessions shall not be considered, and by our calculations, is not in the square foot total of 74,508.

*Capitalization Rate*

Tallgrass next argues COTA erred in adopting the County's lower capitalization rate. The capitalization rate was a battle of the experts and a question of credibility for the factfinder, COTA. Meyer used a capitalization rate of 9%, even though the study Meyer used showed a class A office of larger than 20,000 square feet should have a capitalization rate of 9.25%. Further, the sales Dillon showed in his analysis demonstrated the only tax rate in Topeka of less than 9.5% came from a dental office of under 4,000 square feet. Tallgrass argues the larger properties had capitalization rates of 9.64% and 9.54%, the median for all of Dillon's comparison properties was 9.59%, and the average was 9.8%. Thus, Tallgrass claims there was no evidence to support the County's use of a 9% capitalization rate.

When considered in light of all evidence, there is substantial evidence to support COTA's decision to adopt the County's capitalization rate. While Tallgrass is correct that class A investment properties over 20,000 square feet were given a capitalization rate of 9.25% in the Shawnee County benchmark study, COTA agreed with the County's determination that the Property was an A+ investment class property. The same benchmark study advocated a capitalization rate of 8.75% for such properties, which Meyer increased by .25% to account for the Property's size. Further, COTA noted Tallgrass' expert did not adjust his proposed capitalization rate for comparability; after making such an adjustment, COTA determined Dillon's appraisal supported a 9% capitalization rate.

Tallgrass also fails to show any statutory or caselaw authority to support the rejection of the County's capitalization rate. Thus, Tallgrass has again failed to meet its burden to demonstrate the invalidity of COTA's ruling. K.S.A. 2013 Supp. 77-621(a)(1). Because there is substantial evidence when viewed in light of the record as a whole to

28

support COTA's ruling, and because this court cannot reweigh evidence, COTA did not err in selecting a 9% capitalization rate. See K.S.A. 2013 Supp. 77-621(d).

*Did COTA Act in an Arbitrary, Capricious, and Unreasonable Manner by Failing to Decide Whether Tallgrass Had Been Subjected to Intentional and Systematic Excessive Valuations?*

Tallgrass argues COTA failed to rule on whether the Property has been subjected to intentional and systematic excessive valuations by the County and argues it was, in fact, subjected to such valuations. We will first consider our standard of review and then address Tallgrass' claims. Given the record presented below we find no arbitrary, capricious, or unreasonable acts by COTA.

*Standard of Review*

A rebuttable presumption of validity attaches to all actions of an administrative agency. The burden of proving arbitrary and capricious conduct lies with the party challenging the agency's actions. *Jones v. Kansas State University*, 279 Kan. 128, 140, 106 P.3d 10 (2005).

*Did COTA Act Arbitrarily and Capriciously in Failing to Rule on Whether the County Subjected Tallgrass to Intentional and Systematic Excessive Valuations?*

Under K.S.A. 2013 Supp. 77-621(c)(3), the Court of Appeals shall grant relief if COTA has not decided an issue requiring resolution. The arbitrary and capricious test of K.S.A. 2013 Supp. 77-621(c)(8) relates to whether a particular action should have been taken or was justified, such as the reasonableness of an agency's exercise of discretion in reaching a determination or whether the agency's action was without foundation in fact. *Kansas Dept. of Revenue v. Powell*, 290 Kan. 564, 569, 232 P.3d 856 (2010).

Tallgrass claims COTA erred by failing to rule on its excessive valuation claim, but Tallgrass fails to provide a record citation showing where it raised such a claim before COTA and fails to explain how COTA erred in failing to address a claim not raised before it. A point raised incidentally in a brief and not supported by the record is deemed abandoned. *Friedman v. Kansas State Bd. of Healing Arts*, 296 Kan. 636, 645, 294 P.3d 287 (2013). Thus, Tallgrass' claim is not properly before us, and we decline to address it. However, we may still address Tallgrass' underlying claim that COTA's decision was unconstitutional. See K.S.A. 2013 Supp. 77-621(c)(1).

*Did the County Systematically and Intentionally Discriminate Against Tallgrass?*

Uniform and equal taxation is guaranteed under the Kansas Constitution, Article 11. Tallgrass argues this right was violated by the County through its consistent valuation of the Property above fair market value. Tallgrass claims it was forced to expend time, effort, and money to obtain its guaranteed right to fair market taxation guaranteed by the Kansas Constitution, similar to the facts of the United States Supreme Court case *Allegheny Pittsburgh Coal v. Webster County*, 488 U.S. 336, 109 S. Ct. 633, 102 L. Ed. 2d 688 (1989). However, Tallgrass fails to explain how the facts of *Allegheny* apply to the case at hand.

In *Allegheny*, the Court found systematic and intentional discrimination against a coal company in finding the coal company's property had been assessed at 35 times that of comparable neighboring property for 6 years with no basis for the discrepancy. 488 U.S. at 341. Additionally, the Court found no constitutional basis for challenge in the county's approach to valuation, even when two different methods were used to assess property in the same class. 488 U.S. at 342.

The Court, in *Allegheny*, considered the valuation of the coal company intentionally discriminatory because it was assessed at many times the rate of a

30

comparable neighboring property over an extended period of time. 488 U.S. at 341-42. Here, Tallgrass merely complains that it has been forced to challenge the County's valuation for multiple years without demonstrating a difference between how the County has valued the Property in relation to other comparable properties in Shawnee County.

"Mere excessiveness of an assessment or errors in judgment or mistakes in making unequal assessments will not invalidate an assessment, but the inequality or lack of uniformity, if knowingly high or intentionally or fraudulently made, will entitle the taxpayer to relief." *Addington v. Board of County Commissioners*, 191 Kan. 528, 532, 382 P.2d 315 (1963). Here, Tallgrass fails to show any indicia of bad faith, arbitrary, or oppressive action by the County. When "the only evidence of excessiveness is in dispute and evidence offered to establish a base for comparison in attempting to show lack of uniformity is found to be inadequate and insufficient by the trier of facts, an assessment, made within statutory confines, will not be invalidated by judicial intervention." *Cities Service Oil Co. v. Murphy*, 202 Kan. 282, 294, 447 P.2d 791 (1968).

Tallgrass does not show how its market valuation is excessive in relation to comparable properties, and the only evidence of its excessive market valuation is in dispute. Tallgrass has further failed to sustain its burden of proof to show that its property has been valued excessively. See *Northern Natural Gas Co. v. Dwyer*, 208 Kan. 337, 368, 492 P.2d 147 (1971). Because Tallgrass' only claim of excessive valuation is based on evidence in dispute, Tallgrass fails to demonstrate indicia of bad faith or intentional action on the part of the County. Tallgrass has failed to sustain its burden of proof in demonstrating that the Property has been systematically and intentionally valued excessively.

31

CONCLUSION

As the appealing party, Tallgrass had the burden to show the acts of COTA were not supported by the record. The record reflects this is a difficult property to appraise under a mass appraisal with the 1992 USPAP Standards. Tallgrass argued for the application of the rollover provision of K.S.A. 2013 Supp. 79-1460(a)(2), but it failed to recognize the rollover provision is only for that tax year and the next tax year. There is no double-year rollover just because three tax year appeals are pending when the first appeal is answered invoking K.S.A. 2013 Supp. 79-1460(a)(2) for the next tax year. The COTA-determined method for the fair market valuation of the property is supported by substantial competent evidence and will reflect a reasonable fair market value upon recalculation pursuant to the directions in this opinion.

Recalculating the fair market value will require COTA to utilize the total square feet of the building at 74,508, properly allocated as the parties have agreed, between the three uses of office, medical, and surgical space. COTA shall use the rental rates COTA has previously determined for each type of use.

Affirmed in part, reversed in part, and remanded with instructions to recalculate the rental area based on the agreed-to rent rolls from the County's appraisal but excluding MC Concessions from the total area of 74,508 square feet, basing tenant usage as the parties have agreed, and using all other valuation inputs and expenses as originally adopted by COTA.

Affirmed in part, reversed in part, and remanded with directions.