The opinion of the court was delivered by
Biles, J.:
This is an original action in mandamus challenging a unique aspect of the State s statutory methodology for valuing real property for ad valorem taxation purposes. It is brought by 21 boards of county commissioners against Nick Jordan, Secretaiy of the Kansas Department of Revenue, and David N. Harper, Director of Property Valuation.
The dispute concerns Harpers statewide directive to county appraisers requiring compliance with K.S.A. 2014 Supp. 79-1460, which prohibits increasing the valuation of real property for 2 tax years after a successful valuation appeal without documented substantial and compelling reasons to do so. Generally speaking, all other taxable real property is reappraised annually at fair market value. The Counties argue this dichotomy between property that was subject to a successful valuation appeal and all other property *846 violates our state’s constitutional mandate to the legislature to provide a “uniform and equal basis of valuation and rate of taxation of all property subject to taxation.” Kan. Const, art. 11, § 1(a) (2014 Supp.). We agree with the Counties.
The legislature has statutorily provided that all taxable property must be listed and valued every January 1. See K.S.A. 79-309. Real property, other than property devoted to ágricultural use, is appraised at fair market value on that date. See K.S.A. 79-501; see also Kan. Const, art. 11, § 12 (providing land devoted to agricultural use may be valued on basis of agricultural income or productivity). But the challenged statute changes this for a discrete group of taxpayers by insulating them from the annual valuation process. Such preference is constitutionally forbidden. See State ex rel. Stephan v. Martin, 227 Kan. 456, 468, 608 P.2d 880 (1980) (Martin I) (Kan. Const, art. 11, § l[a] “prohibits favoritism, and requires uniformity in valuing property for assessment purposes so that the burden of taxation will be equal.”).
We hold K.S.A. 2014 Supp. 79-1460 is unconstitutional to the extent it prevents appraisers from valuing taxable real property at its fair market value in any tax year. We further hold that subsections (a)(2) and (c) of K.S.A. 2014 Supp. 79-1460, which are the constitutionally offending provisions, are severable from the remainder of the statute. The writ of mandamus is issued and relief ordered to preclude respondents from further efforts to implement the stricken statutory provisions.
Factual and Procedural Background
The facts are straightforward and undisputed. The legislature enacted K.S.A. 2014 Supp. 79-1460, effective July 1, 2014. Under the statute, when a property owner successfully appeals a property valuation, subsection (a)(2) prevents the valuation from being increased during the next 2 tax years unless certain conditions are met. Subsection (a) states:
“The county appraiser shall notify each taxpayer in the county annually on or before March 1 for real property and May 1 for personal property, by mail directed to the taxpayer’s last known address, of the classification and appraised valuation of the taxpayer’s property, except that, the valuation for all real property shall not be increased unless: (1) The record of the latest physical inspection was *847 reviewed by the county or district appraiser, and documentation exists to support such increase in valuation in compliance with the directives and specifications of the director of property valuation, and such record and documentation is available to the affected taxpayer; and (2) for the next two taxable years following the taxable year that the valuation for real -property has been reduced due to a final determination made pursuant to the valuation appeals process, documented substantial and compelling reasons exist therefor and are provided by the county appraiser.” (Emphasis added.)
The statute goes on to limit the “documented substantial and compelling reasons” for a county appraiser to increase the qualified property’s valuation during the 2-year grace period by specifying;
“(c) For purposes of this section:
(1) The term ‘substantial and compelling reasons’ means a change in the character of the use of the property or a substantial addition or improvement to the property;
(2) the term ‘substantial addition or improvement to the property’ means the construction of any new structures or improvements on the property or the renovation of any existing structures or improvements on the property. The term ‘substantial addition or improvement to the property’ shall not include:
(A) Any maintenance or repair of any existing structures, equipment or improvements on the property; or
(B) reconstruction or replacement of any existing equipment or components of any existing structures or improvements on the property.”
On May 16, 2014, Harper issued Directive #14-047 pursuant to his statutory responsibilities as property valuation director to enforce ad valorem property tax statutes. See, e.g., K.S.A. 2014 Supp. 79-505(a) (director authorized to adopt appraiser directives prescribing standards for appraisals concerning ad valorem taxation); K.S.A. 79-1404 Second (directors duty to confer with, advise, and direct appraisers, boards of commissioners, and others obligated to malee levies and assessments as to their duties under Kansas statutes); K.S.A. 2014 Supp. 79-1460(a)(l). Directive #14-047, in part, instructed all county appraisers to comply with K.S.A. 2014 Supp. 79-1460(a):
“When the valuation for real property has been reduced due to a final determination made pursuant to the valuation appeals process the county appraiser shall comply with K.S.A. 79-1460. This requirement is a jurisdictional exception when it prevents the value of a parcel from increasing to the value as indicated by the mass appeal appraisal process.”
*848 On November 30,2015, the Counties filed this original action in mandamus to challenge the constitutionality of K.S.A. 2014 Supp. 79-1460 and, consequently, Harpers Directive #14-047. Petitioners are the boards of county commissioners for Johnson, Barton, Chautauqua, Cowley, Douglas, Elk, Ellis, Finney, Franklin, Geary, Harper, Harvey, Leavenworth, Lyon, McPherson, Miami, Ness, Pottawatomie, Reno, Riley, and Wyandotte Counties.
In their petition, the Counties note their county appraisers are required by law to send a “Notice of Valuation” for each parcel of real property in their jurisdictions no later than March 1, 2016, using the valuation methodologies fixed by law. They claim further that if their appraisers comply with K.S.A. 2014 Supp. 79-1460(a) (2) by maintaining a valuation reduced during the 2015 valuation appeal process, they potentially face litigation from other taxpayers as tax burdens within their counties shift due to the undervaluing of property caused by compliance with K.S.A. 2014 Supp. 79-1460(a)(2). They also note if they refuse to comply with Harpers directive, their county appraisers face possible removal from office or other penalties under the property valuation director s statutory authority. See K.S.A. 79-1404.
On December 7, 2015, this court ordered Jordan and Harper to answer the petition no later than December 18. See Supreme Court Rule 9.01(c)(3) (2015 Kan. Ct. R. Annot. 88). But on that date, respondents instead moved for an extension of time until January 8, 2016, to respond. On December 22, this court denied the extension because of the looming March 1 deadline for valuations and set a schedule for briefing and oral arguments.
In their brief, respondents oppose the requested relief, arguing: (1) this is not an appropriate case to exercise our discretionary original jurisdiction; (2) the Counties lack standing because they fail to allege an actual injury giving rise to suit; and (3) tire statute is constitutional because it is rationally related to legitimate government interests. In tire alternative, if we hold K.S.A. 2014 Supp. 79-1460(a)(2) and (c) are unconstitutional, respondents argue the challenged provisions are severable from the remainder of K.S.A. 2014 Supp. 79-1460. We consider those arguments in that sequence.
*849 Exercising Original Jurisdiction Is Appropriate
A mandamus action seeks “to compel some inferior court, tribunal, board, or some corporation or person to perform a specified duty, wbicb duty results from the office, trust, or official station of the party to whom the order is directed, or from operation of law.” K.S.A. 60-801. Judgments in mandamus must specify with particularity the acts or act the respondent is compelled to perform or enjoined from performing. K.S.A. 60-802. This court has original jurisdiction in mandamus. Kan. Const, art. 3, § 3 ("The supreme court shall have original jurisdiction in proceedings in quo warran-to, mandamus, and habeas corpus; and such appellate jurisdiction as may be provided by law.”).
But as the parties correctly observe, under the circumstances of the present controversy, mandamus would also be an appropriate proceeding to initiate with the district court. See K.S.A. 60-801. And when there is concurrent jurisdiction, our procedural rules recognize this court should exercise its original jurisdiction cautiously. See Supreme Court Rule 9.01(b) (2015 Kan. Ct. R. An-not. 88) (“An appellate court ordinarily will not exercise original jurisdiction if adequate relief appears to be available in a district court.”); see also State ex rel. Schmidt v. City of Wichita, 303 Kan. 650, 656, 367 P.3d 282, (2016) (“[Tjhis court has traditionally been somewhat lenient on enforcement of that general rule.”); Comprehensive Health of Planned Parenthood v. Kline, 287 Kan. 372, 405, 197 P.3d 370 (2008) (“[Tjhis court has discretion to exercise its original jurisdiction even if relief also is available in the district court.”).
Mandamus is a proper remedy when the essential purpose is to obtain an authoritative interpretation of law for the guidance of public officials in their administration of public business, notwithstanding the fact that there also exists an adequate remedy at law. State ex rel. Stephan v. Kansas House of Representatives, 236 Kan. 45, 52, 687 P.2d 622 (1984). To this end, when a petition for mandamus “presents an issue of great public importance and concern, the court may exercise its original jurisdiction . . . and settle the question.” 236 Kan. at 52; see also Long v. Board of Wyandotte *850 County Comm’rs, 254 Kan. 207, 212, 864 P.2d 724 (1993) (mandamus appropriate when “an issue of law affects public officials, presents an issue of great public importance and significant State interest, and requires a speedy adjudication”); State, ex rel., v. State Highway Comm., 132 Kan. 327, 334-35, 295 P. 986 (1931) (“The use of mandamus to secure a speedy adjudication of questions of law for the guidance of state officers and official boards in the discharge of their duties is common in this state.”).
We have little difficulty fitting this case within our discretionary boundaries for consideration of an original action. The constitutionality of K.S.A. 2014 Supp. 79-1460 most certainly is an “issue of law” that “affects public officials” on both sides of the controversy. And when “a public official’s action or refusal to act is based upon a statute whose validity is challenged, mandamus may fie in appropriate cases.” Stephens v. Van Arsdale, 227 Kan. 676, 682-83, 608 P.2d 972 (1980).
As Revenue Secretary, Jordan appointed Harper as property valuation director and Harper serves at the secretary’s pleasure. See K.S.A. 2014 Supp. 75-5105. Harper, in turn, exercises “general supervision over the administration of the assessment and tax laws of the state, over the county and district appraisers, boards of county-commissioners, county boards of equalization, and all other boards of levy and assessment.” K.S.A. 79-1404 First. Harper expressly has “general supervision and direction of the county assessors in the performance of their duties, and shall regulate and supervise the due performance thereof.” K.S.A. 79-1401. He also has authority to “adopt rules and regulations or appraiser directives prescribing appropriate standards for the performance of appraisals.” K.S.A. 2014 Supp. 79-505. Harper even has authority to compel the attorney general or county attorneys to assist in proceedings to discipline or remove county appraisers who fail to follow applicable tax laws, even though those appraisers are county employees appointed and paid by the board of county commissioners in their respective taxing districts. See K.S.A. 79-1404 Fourth; K.S.A. 2014 Supp. 19-430.
On May 16, 2014, pursuant to his statutory responsibilities, Harper directed county appraisers to comply with K.S.A. 2013 *851 Supp. 79-1460 when appraising real property for tax purposes. County appraisers were required to value taxable Kansas real estate in accordance with that directive as of January 1, 2015. K.S.A. 79-1412a(a) Second. Harper has indicated he will follow the statute. From this, we conclude the legal issue affects various public officials, i.e., Jordan and Harper, as well as every county appraiser and board of county commissioners in the state.
Respondents also argue this controversy does not present an issue of great public importance and significant State interest because K.S.A. 2014 Supp. 79-1460 affects only a small taxpayer group, i.e., those who have successfully appealed a property valuation. They note the Counties refer to Johnson County, where it is represented that about 2.5 percent of the overall number of parcels in that county are appealed.
But any preferential valuation benefitting only a few properties will adversely influence the tax burden for all other taxpayers whose properties do not enjoy the preference. This is because the property tax rate within a given taxing district, such as a county in this instance, is determined by the aggregate amount of taxes to be levied against the aggregate valuation of the taxable property in that district. See K.S.A. 2014 Supp. 79-1803. The tax burden is borne by each property owner in proportion to the assessed value of his or her property. This means that when a taxpayers property is undervalued in a tax year because the valuation used is from a prior tax year, the burden of supplying the necessary tax revenue due the taxing district is inevitably absorbed by the remaining property owners. In short, inequity in property valuation results in inequity in the ad valorem tax burden. See Martin I, 227 Kan. at 461-62. So despite respondents’ suggestion that there is a small universe of persons affected, all property taxpayers who are not the beneficiaries of the statute s preferential 2-year fixed valuations are adversely impacted.
We conclude these circumstances describe an issue of great public importance and significant State interest. The relative tax burdens for all taxable property in our state appears impacted to some degree by this controversy. See Wilson v. Sebelius, 276 Kan. 87, 91, 72 P.3d 553 (2003) (accepting mandamus jurisdiction over *852 statutory scheme for filling vacancies in public offices potentially impacting virtually every public office in the state).
Next, respondents suggest this case presents disputed questions of fact that a court would need to determine to scrutinize the legislature’s reasons for enacting the original statute, its 2014 amendments, as well as the effect of the 2014 revision. If so, they contend, the case is better left to the district court or some other factfinding proceeding that would delay consideration of the issues presented. See Supreme Court Rule 9.01(d) (Supreme Court may refer matter to district court judge or commissioner to take testimony and recommend findings of fact).
But the Counties raise a facial challenge to the statute’s constitutionality, which is purely a question of law. And this court has repeatedly accepted original jurisdiction involving challenges to statutes’ facial conformance with our constitution—though relief is not always granted on constitutional grounds. See City of Wichita, 303 Kan. 650, (original action in quo warranto challenging constitutionality of city ordinance under home rule amendment; case decided on statutory grounds); Wilson, 276 Kan. 87 (original action in quo warranto challenging constitutionality of statutes for filling vacancies in public office; statutes construed to avoid constitutional question); Kansas House of Representatives, 236 Kan. 45 (original action in quo warranto and mandamus challenging constitutionality of statute that permitted legislature to adopt, modify, and revoke administrative regulations without presentment to governor); State ex rel. Stephan v. Martin, 230 Kan. 759, 641 P.2d 1020 (1982) (.Martin III) (original action in quo warranto challenging statute concerning valuation of farm machinery and equipment for ad va-lorem tax purposes under Kan. Const, art. 11, § 1).
And even under the respondents’ arguments that the statute’s constitutionality must be measured against the rational basis test to justify the differing treatments the statute affords to groups of taxpayers, that rational basis is still a question of law. See Hoesli v. Triplett, Inc., 303 Kan. 358, 369, 361 P.3d 504 (2015) (noting “[wjhether a statute violates equal protection is a question of law” and applying rational basis review to workers compensation statute).
*853 Given our analysis of the principal issue, we view this case as one that can be readily decided by analyzing the statute against our constitution s uniform and equal mandate without need for further factual development.
Finally, respondents argue any need for a speedy adjudication due to the March 1 deadline for the Notification of Valuation required by K.S.A. 2014 Supp. 79-1460(a) is manufactured because fire Counties waited more than a year after the 2014 amendments now found in K.S.A. 2014 Supp. 79-1460 to file this action. Even worse, respondents add, the predecessor statute, K.S.A. 1992 Supp. 79-1460, which contained a 1-year moratorium on valuation increases, has been effective for 23 years without judicial challenge. They cite Long, which characterized the need for a speedy adjudication as a necessary element for consideration in exercising mandamus. 254 Kan. at 213 (“It is only where an issue of law affects public officials, presents an issue of great public importance and significant state interest, and requires a speedy adjudication that mandamus is an appropriate and proper means to decide the issue.”).
These are legitimate concerns, especially given the obvious strain on resources for all involved to decide this controversy expeditiously within the statutory framework. But what appears to be a preventable delay in bringing this action—while hard to fathom—is not fatal in this instance. A speedy adjudication would be required whenever a challenge to K.S.A. 2014 Supp. 79-1460 was brought because county appraisers carry out their work of valuing property throughout the year. See K.S.A. 79-1412a. And we give considerable weight to the fact that 21 boards of county commissioners, with a substantial portion of the states taxable real property collectively within their taxing districts, joined to petition this court to resolve the controversy.
We hold that this case presents a question of law of significant statewide importance, affecting numerous public officials, as well as most every owner of taxable property in the state. Under the circumstances, our discretion is justified in exercising original jurisdiction in this mandamus action.
*854 The Counties Have Standing
Respondents next argue the Counties lack standing to prosecute this action because they have not suffered a concrete, particularized injury. “ ‘Standing is “a party’s right to make a legal claim or seek judicial enforcement of a duty or right.” ’ ” Gannon v. State, 298 Kan. 1107, 1121, 319 P.3d 1196 (2014) (quoting Board of Miami County Comm’rs v. Kanza Rail-Trails Conservancy, Inc., 292 Kan. 285, 324, 255 P.3d 1186 [2011]). Standing is a jurisdictional question in which courts determine whether a party has alleged a sufficient stake in the outcome of a controversy to warrant invocation of jurisdiction and to justify exercise of the court’s remedial powers on that party’s behalf. Board of Sumner County Comm’rs v. Bremby, 286 Kan. 745, 750-51, 189 P.3d 494 (2008).
This court recently considered the standing necessary for a public’ official to bring a declaratory judgment action challenging a statute’s constitutionality. We held that the plaintiff, in that case a district court chief judge, had standing because he had shown (1) a cognizable injury suffered; and (2) a causal connection between that injury and the challenged conduct. Solomon v. State, 303 Kan. 512, 521, 364 P.3d 536 (2015). To demonstrate a “cognizable injury,” we said the person bringing the claim must show a personal interest in tire courts decision and that he or she personally suffers some actual or threatened injury as a result of the challenged conduct. 303 Kan. at 521. We concluded the chief judge’s standing for declaratory judgment purposes was demonstrated by the dilemma faced in the performance of the chief judge’s official duties caused by an alleged conflict between a statute and a Supreme Court Rule. 303 Kan. at 522. The'Counties meet that test here.
The Counties note their county appraisers are required to send a Notice of Valuation for real property on March 1,2016. They argue that if the county appraiser complies with the statute claimed to be unconstitutional, potential tax monies are lost for 2016 and possibly for 2017. But noncompliance could result in multiple appeals by individual taxpayers. The Counties could also lose additional tax monies for interest and refunds from the Counties’ general funds. Moreover, the county appraisers could be removed from office or otherwise penalized if they do not follow the statute and directive.
*855 The petition also cites Director Harpers Directive #14-047, which indicates the county commissioners serve as “the client” and the taxing districts are the “intended users of the appraisal.”
In the Counties’ reply brief, they expound, further on the interrelationship between themselves, their county appraisers, and respondents with much emphasis on Director Harper s dominance of the appraisal process at the county level. The Counties note they appoint their county appraisers for 4-year terms expiring June 30 of the fourth year. See K.S.A. 2014 Supp. 19-430(a). But to be appointed, the person must meet eligibility requirements in rules and regulations adopted by Secretary Jordan. K.S.A. 2014 Supp. 19-430(b). Responsibility for funding the appraisers duties and operations falls on the Counties. K.S.A. 79-1471 and K.S.A'. 79-1401.
The Counties also explain that Director Harpers authority over both their appraisers and the Counties places them at risk if they-refuse to follow Directive #14-047, even though the Counties believe tire statute is unconstitutional. Byway of example, K.S.A. 79-1404 Third provides Director Harper with authority to cause complaints to be made against county appraisers and county commissioners “for their removal from office for official misconduct or neglect of duty” for failure or neglect to comply with orders of the director of property valuation. K.S.A. 79-1405 gives the property valuation director “the power and authority to prosecute any member of any board of county commissioners and any county . . . for a violation of any of the rules and regulations which may be prescribed, or the violation of any statute of this state relating to the assessment and valuation of property and the collection of taxes.” See also K.S.A. 2014 Supp. 79-1479 (director may immediately assume duties of county appraiser if Board of Tax Appeals finds the county is not in substantial compliance with property appraisal requirements); K.S.A. 2014 Supp. 79-1426 (making knowing or willful failure to appraise or assess real estate as required by law a misdemeanor).
County commissioners take an oath of office swearing to support the Constitution of the state of Kansas and faithfully discharge their duties. See K.S.A. 54-106 and K.S.A. 75-4308. The county is the governmental unit “charged with the primaiy responsibility for *856 the administration of all laws relating to the assessment, review, equalization, extension and collection of real and personal property taxes.” K.S.A. 79-1411a. And the Counties are designated as the proper entity to levy taxes for county operations. See K.S.A. 79-1802; K.S.A. 2014 Supp. 79-1946. Indeed, die Counties levy taxes on property within their boundaries based on appraisals currently governed by K.S.A. 2014 Supp. 79-1460. As acknowledged in Directive #14-047, “county commissioners serve as the client and the taxing districts are the intended users of the appraisal.” Moreover, tire operations for which property taxes are levied include those of the county appraiser and his or her staff. See K.S.A. 79-1471.
The Counties also play an important role in protecting the uniformity of the ad valorem tax system as applied to property situated within their boundaries. The boards of county commissioners are empowered to petition the State Board of Tax Appeals for reappraisal of property within the county when “the appraisal of real property or tangible personal property in any county is not in substantial compliance with law and the guidelines and timetables prescribed by the director of property valuation . . . .” K.S.A. 2014 Supp. 79-1413a. And boards of county commissioners frequently are called upon to defend their appraisers’ valuations in property tax appeals in the administrative tribunals and courts of this state. See, e.g., In re Equalization Appeal of Tallgrass Prairie Holdings, 50 Kan. App. 2d 635, 333 P.3d 899 (2014) (Board of Shawnee County Commissioners appealing from decision of Court of Tax Appeals); In re Equalization Appeal of Johnson County Appraiser, 47 Kan. App. 2d 1074, 283 P.3d 823 (2012); Board of Saline County Comm'rs v. Jensen, 32 Kan. App. 2d 730, 88 P.3d 242 (2004).
We conclude the Counties have standing because they are squarely faced with a dilemma. The ad valorem tax system in which they play an integral role in their respective taxing districts suffers from a constitutional flaw in their view. And while they are considered the client of the appraisal process, with their taxing district the end user of its result, the Counties are powerless to perform their constitutional duties as they see them due to the director’s authority over both them and their appraisers and his decision to comply with the challenged statute until ordered otherwise by this *857 court. And if the process is allowed to unfold as contemplated by the statute, they foresee litigation from taxpayers affected by the statute, the loss of tax money for the payment of potential refunds, and possible penal action against county appraisers and other county officials. Under these circumstances, we hold that the Counties have standing to bring this action challenging the constitutionality of K.S.A. 2014 Supp. 79-1460.
The Statute Violates the Constitutional Mandate
To understand the parties’ dispute we begin by taking a broader view of the constitutional provision at issue. Article 11, § 1 of the Kansas Constitution is complicated and serves multiple purposes. In recognition of the fact that this section gets amended with some frequency, it establishes that the current provisions apply to all assessment and taxation of property on January 1, 2013, and each year thereafter. Then, it contains the language at issue stating that the legislature “shall provide for a uniform and equal basis of valuation and rate of taxation of all property subject to taxation.” Section 1 then creates seven subclasses of property and indicates each subclassification must be “assessed uniformly” at certain percentages of value. It also recognizes that certain property “shall be exempted” from property taxation. Art. 11, § 1(b) (2014 Supp.). Finally, it grants the legislature some discretion in exempting other property. Art. 11, § 1(a) (2014 Supp.). The controversy presented by the Counties focuses more narrowly on tire provision requiring a “uniform and equal basis of valuation.” And in accordance with this mandate, the legislature provides that all taxable property must be listed and valued every January 1. See K.S.A. 79-309.
The issue in this case concerns the valuation of real property. Real property, other tiran agricultural use property, is appraised at its fair market value every January 1. See K.S.A. 79-501. Fair market value is a defined term applicable to all taxable real property other than that used for agricultural purposes. See K.S.A. 2014 Supp. 79-503a. The dispute presented arises because the legislature made a unique exception to the process of valuing taxable real property.
K.S.A. 2014 Supp. 79-1460 provides that if a taxpayer successfully appeals the valuation in a tax year this valuation cannot be *858 raised for the next 2 tax years without documented substantial and compelling reasons to do so. And the term “substantial and compelling reasons” is statutorily limited by its definition. The combined effect of K.S.A. 2014 Supp. 79-1460 is to relieve a select group of taxpayers from tire annual valuation process to which every other real property owner is subject. The question is whether this distinct treatment conflicts with the constitutional mandate “for a uniform and equal basis of valuation ... of all property subject to taxation.” We hold that it does.

Presumption of Constitutionality

Whether a statute is constitutional is a question of law. But before a statute may be struck down, the constitutional violation must be clear. The statute is presumed to be constitutional, and all doubts are resolved in favor of upholding it. If a court can find any reasonable way to construe the statute as valid, it must. Solomon, 303 Kan. at 523.

The Test for Constitutionality

The parties agree we must decide whether K.S.A. 2014 Supp. 79-1460 conforms with the “uniform and equal basis of valuation” clause in article 11, § 1(a) of the Kansas Constitution. Our threshold question concerns the appropriate test to use in deciding whether the statute conforms to our constitutional mandate for a uniform and equal basis of valuation and rate of taxation.
This court last addressed the constitutionality of statutes creating separate rules for the valuation of limited classes of property in a trio of cases in the early 1980s. See State ex rel. Stephan v. Martin, 227 Kan. 456, 608 P.2d 880 (1980) (Martin I); State ex rel. Stephan v. Martin, 230 Kan. 747, 641 P.2d 1011 (1982) (Martin II); Martin III, 230 Kan. 759. In these cases, the court tested the validity of such statutes by considering whether the special treatment given to the valuation of one group of property bears a “reasonable relationship to the actual fair market value” of the property. Martin II, 230 Kan. at 756. In other words, the court considered only whether the statutes at question were designed to value the subject property on the same basis as all other taxable property not excluded from the *859 constitution’s uniform and equal basis of valuation mandate. .It is necessary to consider this trio of cases in detail.
The first case is Martin 1, which delves into the historical rationale of the constitutional mandate. In that case, the court considered the validity of a statute that required appraisers to "‘determinfe] the fair market value’ ” of farm machinery and equipment by subtracting 20 percent from the average value of the equipment prescribed in a state appraisal guide. 227 Kan. at 460. The statute permitted appraisers to deviate from the value established by this method “when he or she determine[d] that the value . . . [did] not reflect the fair market value of the particular property involved as provided for by’” the method. 227 Kan. at 460. In the statute’s defense, the director of property valuation argued it was consistent with K.S.A. 79-503 (Weeks 1977), which enumerated factors to be taken into account in determining fair market value. This was because K.S.A. 79-503 (Weeks 1977) directed appraisers to consider (1) functional, economic, or social obsolescence; and (2) an allowance for abnormal inflationary factors influencing open-market sale values.
The Martin I court concluded the statute was not merely taking into account the “functional, economic or social obsolescence” of the property being valued but was really concerned with conditions affecting the owner. It explained the farm machinery and equipment statute was not designed to ensure farm machinery would be appraised at fair market value because it provided for a flat deduction from a guide value that was intended to establish the fair market value of the property in average condition. See 227 Kan. at 462-63. Instead, “[t]he legislature was granting relief to persons—the owners of farm machinery and equipment—who were confronted with a severe economic crisis.” 227 Kan. at 464. The court further reasoned:
“A finding that a subclassification of property was justified because of ‘the severe economic crisis’ confronting individual farmers and ranchers confuses economic conditions affecting property owners with economic factors affecting the value of property. Such reasoning confuses the ad valorem property tax with the income tax. Unlike the income tax, the property tax is based on the value of the property itself not on the income or economic condition of the property s owner.” 227 Kan. at 466.
*860 As to the second factor, abnormal inflationary influences on value, the court held that did not justify the subclassification for two reasons. First, the rate of inflation in recent years had not approached the 20 percent reduction required by the statute. And second, “to shield certain property. .. from the effects of inflation, when inflation is affecting all property, is an act of discrimination inconsistent with art. 11, § 1 of the Kansas Constitution.” 227 Kan. at 467. The court concluded:
“Based upon all the foregoing reasons, the Director’s attempt to justify the enactment of [the statute] must be rejected, as the law is inconsistent with the provisions of art. 11, § 1 of the Kansas Constitution. By destroying the constitutionally required uniformity and equality in the assessment of all property, a partial exemption from taxation has been granted to farm machinery and equipment. The effect is to lessen tire tax burden that should be borne by such property, all for the purpose of reducing the property tax liability of some owners of farm machinery and equipment.” 227 Kan. at 467.
The court added that
“[t]he ultimate effect of [the statute] was to lessen the legitimate estimate of the fair market value in money of certain items of farm machinery and equipment, and thus, exempt it to that extent from taxation. In this respect the law violates the requirement of art. 11, § 1 of the Kansas Constitution mandating uniformity and equality in tire basis of assessment.” 227 Kan. at 468.
After Martin I, the legislature enacted a different statute addressing the valuation of farm machinery and equipment. See Martin III, 230 Kan. 759. This statute defined the fair market value of farm machinery and equipment as its “average loan value” when new, less a deduction of 10 percent or 20 percent per year of age, depending upon whether the equipment was powered. 230 Kan. at 761. And when litigation ensued, tire issue again was whether the statute violated art. 11, § 1.
After quoting extensively from Mai~tin I, the Martin III court turned to the statute. It first examined the meaning of “average loan value.” The court reviewed published guides to personal property values, including one specifically targeted to farm machinery and equipment. It noted “average loan values” in the farm machinery guide were nearly 30 percent less than average resale prices and 15 percent less than average “as is” prices. The court concluded *861 “average loan value, while having some correlation with fair market value, is not the price ‘a well informed buyer is justified in paying and a well informed seller is justified in accepting.’” 230 Kan. at 767.
Then, the court noted the constitution requires a uniform and equal rate of assessment and does not exclude farm machinery from the requirement. It concluded the statute afforded unconstitutional differential treatment to farm machinery and equipment by fixing its initial value, arbitrarily, at average loan value, “without regard to the condition of the property or its sale value on the open market.” 230 Kan. at 767. In comparison, it noted, all other tangible personal property was required to be valued according to K.S.A. 79-503 (Weeks 1977), the predecessor to K.S.A. 2014 Supp. 79-503a. 230 Kan. at 767. In addition, citing Martin I, the Martin III court reasoned the statute improperly shielded farm machinery and equipment from the effects of inflation. Under the statute, “neither inflation [nor] deflation is reflected in the appraisal of farm machinery and equipment . . . .” 230 Kan. at 768. The court concluded:
“The legislature has attempted by [the statute] to grant tax relief by fixing a different, reduced, and discriminatory basis of assessment for certain property. The section thus violates the requirement of uniform and equal assessment mandated by Article 11, Section 1, of the Kansas Constitution. It creates an unlawful classification of personal property for ad valorem tax purposes.” 230 Kan. at 769.
In Martin II, decided the same year as Martin III, the court considered yet another statute that altered the methodology for valuing taxable property—this time concerning the valuation of oil and gas wells and properties. The general rule required appraisers to consider the age of the wells, quantity and quality of oil or gas produced, nearness of the wells to market and market characteristics, the costs of operation, the probable life of the wells, and other facts affecting the property’s value. The challenged statute provided that the value of working and royalty interests in a property that produced
“ ‘oil or gas for the first time in economic quantities on and after July 1 of tire calendar year preceding the year in which such property is first assessed shall be determined... by determining the quantity of oil or gas such property would have *862 produced during tire entire year preceding tire year in which such property is first assessed upon the basis of the actual production in such year and by multiplying the income and expenses that would have been attributable to such property at such production level... by sixty percent....’” 230 Kan. at 749.
The legislature adopted the provision to account for “flush production,” in which new wells temporarily produce at a much greater rate than would be customary under ordinary circumstances. If used as a factor in determining value, that initial excessive production was “misleading and often resulted] in excessive valuation and assessment for the initial year of taxation.” 230 Kan. at 749.
The statute’s opponents argued it resulted in differential treatment of oil and gas properties, contrary to the uniform and equal clause of article 11, § 1. The court held the statute was constitutional. It noted “[t]his court has long recognized that the legislature may prescribe the manner in which certain property shall be appraised in order to arrive at fair market value.” 230 Kan. at 755 (citing Bank v. Geary County, 102 Kan. 334, 170 P. 33 [1918]; Hunt v. Allen County, 82 Kan. 824, 109 P. 106 [1910]; and Francis, Treas., v. A. T. & S. F. Rld. Co., 19 Kan. 303 [1877]). It reasoned that the challenged provision
“merely adds one more factor to the other statutory factors to be utilized in determining the fair market value when tire property is subject to the misleading phenomena of flush production. As such it is merely one element to be used in certain cases to assure that the lease or property is more nearly appraised at fair market value the same as other leases or properties which have an actual production history which may be relied upon in making the determination.” Martin II, 230 Kan. at 755.
Discussing K.S.A. 79-503 (Weeks 1977), the predecessor to K.S.A. 79-503a, the court said the statute provided a list of criteria to consider in arriving at fair market value, the objective of which was to guide the appraiser in arriving at that figure. It characterized the challenged statute as criteria other than those set out in K.S.A. 79-503 (Weeks 1977) to arrive at the same figure, oil and gas property “[b]eing unique from the ordinary type of personal property.” 230 Kan. at 755. But it noted:
“The objective under both statutes is to reach the actual fair market value in die market place as opposed to a fictional, unrealistic, or arbitraiy determination as was attempted in [the statutes challenged in Martin I and Martin III], wherein *863 special treatment was given to the valuation of farm machinery which bore no reasonable relationship to the actual fair market value of the machinery. The statute here in question was adopted to furnish criteria to be utilized in appraising a certain category of property because the general criteria . . . were not applicable. However, the goal of [the statute] is tire same, that is, to arrive at the actual fair market value of the property appraised.” 230 Kan. at 755-56.
Respondents do not favor the court with a discussion of the Martin cases, and instead couch their arguments in terms of equal protection based on later cases involving tax exemptions. They argue the constitutional test for compliance depends only on whether the legislature had a rational basis for the preferential tax treatment granted by the statute, citing the tax exemption case, State ex rel. Tomasic v. Kansas City, Kansas Port Authority, 230 Kan. 404, 426, 636 P.2d 760 (1981) (Tomasic I). Respondents argue the legislature was justified in giving more favorable valuation treatment to taxpayers who successfully lowered their property valuation in a tax appeal to recognize their expense in doing so and to prevent taxing districts from retaliation by increasing the valuation the next tax year. The legislative history suggests this indeed was a motivating policy concern when the legislature enacted K.S.A. 2014 Supp. 79-1460.
But tax exemptions are different than tax valuations. And, as summarized above, the tax valuation cases utilize a stricter test when interpreting the constitutional language at issue here.
Respondents acknowledged in oral arguments that to adopt their rational basis view we likely must overrule the Martin line of cases, as well as the cases upon which their holdings are based. Put another way, perhaps the more accurate statement is that respondents’ reliance on Tomasic I to argue that we should apply a rational basis test suggests they believe the Martin cases were overruled. Either way, we conclude the tests are different because the constitutional requirements at issue are different.
In Tomasic I, the challenge was to the constitutionality of two different statutory schemes concerning development of an industrial-use facility for the General Motors Corporation. More specifically, the case challenged the legality of 10-year ad valorem property tax exemptions granted for the project’s facilities and equipment *864 purchased with revenue bond proceeds. Those exemptions were attacked under both Kansas Constitution article 11, § 1 and the Equal Protection Clause of the United States Constitution. Respondents seize on the following statement from Tomasic I:
“Where constitutional challenges have been made to tax exemption schemes as violative of Article 11, Section 1, of the Kansas Constitution, this court has consistently held that the uniform and equal rate of assessment and taxation provision is, in principle and effect, substantially identical to the principle of equality embodied in the Equal Protection Clause of the United States Constitution.” 230 Kan. at 426.
See also State ex rel. Tomasic v. City of Kansas City, 237 Kan. 572, 584, 701 P.2d 1314 (1985) (Tomasic II) (citing Tomasic I, 230 Kan. at 426).
In a case involving the taxation of intangible property and the exemption of such property from taxation, this court has characterized this statement as establishing that the Tomasic court had “held article 11, § 1, is substantially identical to the principle of equality embodied in the Equal Protection Clause of the 14th Amendment.” Von Ruden v. Miller, 231 Kan. 1, 10, 642 P.2d 91 (1982). But later in the same opinion, the Von Ruden court clarified that this statement was limited to “constitutional challenges ... to tax exemption schemes.” 231 Kan. at 13-14. And in a case concerning whether article 11, § 1 required that the personal property of an oil pipeline company be taxed as “public utility property” or as “commercial and industrial property,” like the personal property of railroads, the court characterized this statement as holding “the protection granted by uniform and equal rate of assessment and taxation provision... is virtually identical to the protection granted under the Equal Protection Clause.” Colorado Interstate Gas Co. v. Beshears, 271 Kan. 596, 609, 24 P.3d 113 (2001). We also note additional cases referenced in the parties’ pleadings in which the language from Tomasic I has found its way into the court’s article 11, § 1 analysis are in contexts other than property tax exemptions. See In re Tax Appeal of City of Wichita, 274 Kan. 915, 920, 59 P.3d 336 (2002) (sales tax assessment) (citing Colorado Interstate Gas, 271 Kan. at 609); Peden v. Kansas Dept. of Revenue, 261 Kan. 239, 251-52, 930 P.2d 1 (1996) (income tax rates).
*865 Respondents argue these authorities show the rational basis test used to assess whether discriminatory tax practices violate equal protection is applicable in our analysis of K.S.A. 2014 Supp. 79-1460. They are mistaken. We conclude some of the language from these cases may have been inartful to the extent it referred to article 11, § 1 in such sweeping terms without recognizing the provision’s multiple purposes. But as the facts in these cases show, none concerned statutory differences in valuation methodologies such as the ones at issue in Martin I, Martin II, and Martin III.
Tomasic I, the decision from which tire language in each of these cases cited by respondents emanates, is a property tax exemption case. And a property tax exemption is just that—an exemption from ad valorem taxation on the subject property. It does not represent a difference in a property’s valuation methodology prior to the calculation of tax liability as we have in the case brought by the Counties. We also observe that exemptions of private property must be based on the property’s use, not tire circumstances of its owner. Topeka Cemetery Ass’n v. Schnellbacher, 218 Kan. 39, 42, 542 P.2d 278 (1975).
It is important to recall that article 11, § 1 (2014 Supp.) has more to it than what has been quoted above. As to exemptions from taxation, it provides for specific exemptions. See § 1(b). It also gives the legislature authority to exempt from taxation certain types of property or property used for certain purposes. See §l(a) (recreational vehicles); see also art. 11, § 13(d) (property found to have a public purpose and promote the general welfare). None of the cases cited in the pleadings for this principle are applicable to the situation presented by K.S.A. 2014 Supp. 79-1460.
Notably, the portion of article 11, § 1 with which we are concerned today applies only to “property subject to taxation.” Plainly, this excludes property that is not subject to taxation by reason of exemption. Faced with a choice between applying the Martin cases, which dealt with statutes of the same character as the one challenged here, or the language from Tomasic I, which by its own terms applies to tax exemption schemes, we must apply the Martin cases. Neither Tomasic I nor the later cases seizing on its language *866 demonstrate that this court has made a deliberate, reasoned decision to construe tire phrase “uniform and equal basis of valuation” as the respondents suggest—that is, to guarantee nothing more than that different bases of valuation will be permitted if a rational basis exists for tire disparate treatment.

K.S.A. 2014 Supp. 79-1460 is unconstitutional

To determine whether the challenged statute violates the constitutional mandate, we begin by putting K.S.A. 2014 Supp. 79-1460 in context.
To provide the constitutionally required “uniform and equal basis of valuation,” the legislature necessitates that “[e]ach parcel of real property shall be appraised at its fair market value in money, the value thereof to be determined by the appraiser from actual view and inspection of the property,” K.S.A. 79-501; see K.S.A. 79-411; “or from statistical methods prescribed by the director of property valuation, from consultation with the owner or agent thereof if expedient and from such other sources of information as are within the appraisers reach . . . .” K.S.A. 79-411; see Martin I, 227 Kan. at 458, 462 (characterizing statute requiring valuation at fair market value as a “response to the constitutional command to provide for a uniform and equal rate of assessment and taxation”). In other words, the “basis of valuation” selected by the legislature is “fair market value.” And in.accordance with our express constitutional provisions, only land devoted to agricultural use is valued on a different basis. K.S.A. 79-501; Kan. Const, art. 11, § 1 (2014 Supp.); Kan. Const, art. 11, § 12.
The legislature has defined “fair market value” as “the amount in terms of money that a well informed buyer is justified in paying and a well informed seller is justified in accepting for property in an open and competitive market, assuming that the parties are acting without undue compulsion.” K.S.A. 2014 Supp.) 79-503a. The appraisal process “shall conform to generally accepted appraisal procedures which are adaptable to mass appraisal and consistent with the definition of fair market value unless otherwise specified by law.” K.S.A. 2014 Supp. 79-503a.-In determining fair market value,
*867 “Sales in and of themselves shall not be the sole criteria ... but shall be used in connection with cost, income and other factors including but not by way of exclusion:
“(a) The proper classification of lands and improvements;
“(b) the size thereof;
“(c) the effect of location on value;
“(d) depreciation, including physical deterioration or functional, economic or social obsolescence;
“(e) cost of reproduction of improvements;
“(f) productivity taking into account all restrictions imposed by the state or federal government and local governing bodies, including, but not limited to, restrictions on property rented or leased to low income individuals and families as authorized by section 42 of the federal internal revenue code of 1986, as amended;
“(g) earning capacity as indicated by lease price, by capitalization of net income or by absorption or sell-out period;
“(h) rental or reasonable rental values or rental, values restricted by the state or federal government or local governing bodies, including, but not limited to, restrictions on property rented or leased to low income individuals and families, as authorized by section 42 of the federal internal revenue code of 1986, as amended;
“(i) sale value on open market with due allowance to abnormal inflationary factors influencing such values;
“(j) restrictions or requirements imposed upon the use of real estate by the state or federal government or local governing bodies, including zoning and planning boards or commissions, and including, but not limited to, restrictions or requirements imposed upon the use of real estate rented or leased to low income individuals and families, as authorized by section 42 of tire federal internal revenue code of 1986, as amended; and
“(k) comparison with values of other property of known or recognized value. The assessment-sales ratio study shall not be used as an appraisal for appraisal purposes.” K.S.A. 2014 Supp. 79-503a.
As can be readily seen, all real property, other than agricultural use property, is valued in the same way every year. K.S.A. 2014 Supp. 79-1460 provides the exception. As quoted above, it requires that the valuation of real property shall not be increased for the, next 2 taxable years following the taxable year that the property’s valuation has been reduced due to a final determination made pursuant to the valuation appeals process unless “documented substantial and compelling reasons exist.” Those reasons are statutorily restricted to a change in the character of the property’s use or a substantial addition or improvement to the property. K.S.A. 2014 Supp. 79-1460(c)(l).
*868 By strictly defining “substantial and compelling reasons” to mean “a change in the character of the use of the property or a substantial addition or improvement to the property” the legislature has made impossible any reasonable construction of the statute that would permit an increase in valuation based on the statutory fair market value criteria. Absent such a reason, property subject to tire appeal statute is valued at its prior fair market value as of January 1 for the next 2 years, while all other property is appraised at its fair market value as of January 1 of the current year. Clearly, the statute’s plain language is targeted at the affected property’s valuation but not in a way related to the property’s fair market value in the current year of appraisal.
Respondents argue that K.S.A. 2014 Supp. 79-1460 does not diminish appraisers’ obligation to value property at its fair market value, and that it would be reasonable to interpret the statute as providing simply another factor to be considered when determining fair market value in the tax years following an appeal. This argument echoes, though it does not rely upon, the rationale for upholding the oil and gas well valuation statute in Martin II. But that case is distinguishable.
The statute in Martin II did not restrict appraisers’ use of the factors employed to determine the fair market value for new oil and gas well properties. It merely governed the manner in which just one of those factors was used. Moreover, the manner prescribed by the legislature was related to determining tire fair market value of the property because it was designed to ameliorate the “misleading phenomena of flush production” when valuing the property. See Martin II, 230 Kan. at 755. Martin II also observed the unique factors used to value oil and gas well properties were necessary based on the exceptional attributes of those properties that rendered the ordinary factors inappropriate.
In contrast, K.S.A. 2014 Supp. 79-1460(a)(2) and (c) restrict appraisers to just two factors that may justify increasing the value of property subject to the statute. Here, nothing other than the fact that the property’s valuation was successfully appealed is offered to explain why property covered by the statute escapes ordinary valuation under K.S.A. 2014 Supp. 79-503a. Nothing suggests some *869 unique quality of the property for which the valuation has been appealed renders all the factors in K.S.A. 2014 Supp. 79-503a irrelevant for the next 2 tax years in determining the property’s value. In other words, K.S.A. 2014 Supp. 79-1460 does not simply require appraisers to ask whether a property’s fair market value remains the same in the 2 years following a successful tax appeal—the statute actually answers that question and forbids any subsequent valuation increase.
The Kansas Constitution is explicit. The legislature “shall provide for a uniform and equal basis of valuation ... of all property subject to taxation.” (Emphasis added.) Kan. Const, art. 11, § 1 (2014 Supp.). While most taxable property is valued at its fair market value in tire current tax year, K.S.A. 2014 Supp. 79-1460 provides that one group of taxpayers’ real estate will not be valued higher than tire prior year’s value. The statute was enacted solely to give preferential treatment to those who have successfully exited the appeal process. Its effect is to lessen the tax burdens for some based on the results of their tax appeals, while at the same time shifting their reduced tax burden to other properties. Nothing suggests this differential treatment is calculated to ensure the property subject to the statute is valued in a tax year on the same basis as other taxable property, i.e., at its actual fair market value in the relevant tax year. Instead, it prevents appraisers from considering relevant valuation factors when fixing the taxable value of the property in the 2 years following a successful appeal.
We hold K.S.A. 2014 Supp. 79-1460 violates article 11, § 1 of the Kansas Constitution by establishing conditions under which county appraisers must not value a property on the same basis as all other property. The requirement set out in our constitution for a “uniform and equal basis of valuation and rate of taxation” establishes a limitation on the legislature’s power when arriving at a system for ad valorem taxation. See Wheeler v. Weightman, 96 Kan. 50, 58, 149 P. 977 (1915). So while the policy goals meant to be realized by the statute s enactment may have merit, the manner chosen by the legislature to realize those goals runs counter to the constitutional limitation. See District of Columbia v. Heller, 554 U.S. 570, 636, 128 S. Ct. 2783, 171 L. Ed. 2d 637 (2008) (“The Constitution *870 leaves the District of Columbia a variety of tools for combating [handgun violence], including some measures regulating handguns [citations omitted]. But the enshrinement of constitutional rights necessarily takes certain policy choices off the table.”).
The Unconstitutional Provisions Are Severable
Respondents alternatively argue drat, if the court holds K.S.A. 2014 Supp. 79-1460(a)(2) and (c) unconstitutional, these provisions should be severed from tíre statute, so the remainder may stay in force. The Counties agree. Respondents go on to note that K.S.A. 79-1484 provides: “If any sentence, clause, subsection or section of this act is held unconstitutional or invalid by any court of competent jurisdiction, it shall be conclusively presumed that the legislature would have enacted the remainder of the act not so held unconstitutional or invalid.”
“On several previous occasions, this court has considered severing a provision from a statute if to do so would make tire statute constitutional and the remaining provisions could fulfill the purpose of the statute.” State ex rel. Morrison v. Sebelius, 285 Kan. 875, 913, 179 P.3d 366 (2008). Whether a provision may be severed depends on tire legislature s intent. The court assumes sever-ability if the unconstitutional portion of a statute can be severed “'“without doing violence to legislative intent.”’” 285 Kan. at 913. “If from examination of a statute it can be said that the act would have been passed without the objectional portion and if the statute would operate effectively to carry out the intention of the legislature with such portion stricken, the remainder of tire valid law will stand.”’” State ex rel. Tomasic v. Unified Gov. of Wyandotte Co./Kansas City, 264 Kan. 293, 317, 955 P.2d 1136 (1998) (Tomasic III).
The portions of K.S.A. 2014 Supp. 79-1460 not challenged here or required to implement the challenged portions provide: (1) the date on which the appraiser must notify taxpayers of the valuation assigned to his or her property; (2) that the value of real property shall not be increased unless the county appraiser has reviewed the latest physical inspection, and documentation, which is available to the taxpayer, exists to support the increase in valuation; (3) *871 the definition of the term “taxpayer” as used in the statute; (4) the required contents of the valuation notice; (5) that failure to timely comply with the notice requirements does not invalidate a change in valuation; and (6) that the director of property valuation is to devise a guide to property tax appeals, to be provided on request to each taxpayer.
Items (1), (2), (3), (4), and (5) predate the challenged provisions, with minor changes made after the first provision instituting a “freeze” on increases in value after successful property appeals was enacted. See L. 1992 ch. 282, sec. 4. In addition, their content is unrelated to the challenged provisions. Most of these subsections deal with the procedures applicable to distributing valuation notices. Item (2) prescribes a guideline for when appraisers may increase the value of real property, but the guideline applies generally to all property. It merely provides that the documentation supporting any increase in value must be available to the taxpayer. While item (6) was not enacted until 1999, its subject matter, too, is unrelated to the challenged provisions. L. 1999, ch. 123, sec. 4. These portions of K.S.A. 2014 Supp. 79-1460 are generally applicable. They are not related to the challenged provisions, are not required to implement the challenged provisions, and the challenged provisions are not required to implement them.
In short, the challenged portions of the statute are “discrete provision[s] of the Act that can be severed from the Act without doing violence to tire basic statutory scheme.” Tomasic III, 264 Kan. at 317. It does not appear the legislature would have intended the entire statute to fall without the challenged provisions. We hold subsections (a)(2) and (c) may be severed from K.S.A. 2014 Supp. 79-1460, so that the remainder of the statute remains effective.
The writ of mandamus is issued and relief ordered to preclude respondents from further efforts to implement the constitutionally offending statutory provisions. .
[[Image here]]